IN RE MOSIER.

(No. 4129—Decided November 17, 1978.)

Court of Common Pleas of Van Wert County.

*Mr. Donald Johnson,* prosecuting attorney, and *Mr. George Crummey,* for plaintiff.

*Messrs. Fuller, Henry, Hodge & Snyder* and *Mr. Stephen B. Mosier,* for defendant.

WISE, J. The minor child has been charged with being an unruly child by virtue of allegedly violating Ordinance 509.08 of the city of Van Wert commonly referred to as the curfew ordinance.

The minor child filed a motion to dismiss based upon among other things, the constitutional invalidity of the

ordinance. The court at the hearing overruled all branches of the motion except that of the unconstitutionality of the ordinance which the court took under advisement. The parties stipulated that the evidentiary hearing on the merits proceed, with same not to be considered if the court held the ordinance invalid on its face, and to be considered if the court held the ordinance constitutionally valid on its face.

The ordinance the child is charged with violating reads as follows:

"509.08 CURFEW FOR MINORS: EXCEPTIONS: ENFORCEMENT.

"(a) *Curfew.* No minor under eighteen (18) years of age shall remain in or upon any public place or establishment between the hours of 10:30 P. M. and 6:00 A. M. on any night preceding a school day, or between the hours of 12:00 midnight and 6:00 A. M. on all other nights; except that no minor under the age of fourteen (14) years shall remain in or upon any public place or establishment between the hours of 10:30 P. M. and 6:00 A. M. on any night. No graduate of an accredited high school, regardless of age, shall be subject to these regulations.

"The provisions of this section shall not apply to any minor accompanied by a parent, or to a minor upon an errand or other legitimate business directed by the minor's parent or to any minor who is engaged in gainful lawful employment during the curfew hours.

"Any organization or group of persons sponsoring late or all night functions which minors under the age of eighteen (18) are invited to or expected to attend, shall first make application to the Chief of Police for permission to hold the function, stating the nature of the function, the hours during which the function will be held and the category or categories of minors expected to attend and the place or places where the function will be located. The granting of permission shall be within the exclusive discretion of the Chief of Police except that in no case shall permission be granted to the same organization or group of persons more than twice in any one (1) calendar year.

The application and permission shall be in writing, and notice thereof shall be given by the Chief to all members of the Police Department, the Van Wert County Sheriff and the Van Wert Post of the Ohio State Highway Patrol. No minor attending a function for which permission has been granted shall be subject to curfew regulations, provided he is in actual attendance at the function and conducts himself in a proper manner.

"(b) *Responsibility of Parents.* No parent shall knowingly permit any minor to remain in or upon any public place or any establishment contrary to the provisions set forth in Section 509.08.

"(c) *Establishment Owners or Operators.* No operator of an establishment or his agent or employee shall knowingly permit any minor to remain upon the premises of the establishment contrary to the provisions set forth in subsection (a) above.

"(d) *Enforcement.* Any police or law enforcement officer who finds a minor apparently violating any provision of this section shall obtain from the minor information concerning his name, age, address and the name of his parent, parents, guardian or custodian. The minor shall be conducted to his home by the officer. Information obtained from the minor, together with any other pertinent facts, shall be forwarded by the Officer of the Van Wert County Juvenile Court within five (5) days, and if requested, the guardian or custodian or other person or persons involved.

"(e) *Violation.* Any adult, either a parent, guardian, custodian or person responsible for a minor who violates this section is guilty of a minor misdemeanor."

In order to determine whether or not the ordinance infringes upon the constitutional rights of the child the court must first determine the meaning of the ordinance and what conduct is prohibited and what is permitted. This legislation not having a preamble setting forth its purpose nor having a definitions section defining the terms used therein, the court must therefore rely on the standard dictionary definitions of the words used therein in construing the ordinance.

All dictionary definitions used herein are taken from Webster Universal Dictionary, Unabridged International Edition, 1970, Harver Educational Services, Inc., New York, New York.

The first term we come to in the Ordinance that must be defined is "remain." The dictionary gives this definition of the verb intransitive form of the word: to stay, to remain behind, to be left, to continue, endure, to stop, to last, continue, to abide, stay, linger, a staying, tarrying, to hesitate, stand still.

The next thing that must be defined is the phrase "public place or establishment." Here there is no dictionary definition of the phrase "public place" or the phrase "public establishment." Ohio Jurisprudence 2d, Words and Phrases, gives no definition for either phrase. 35 Words and Phrases, West Publishing Company, contains 20 pages of definitions and limitations on the meaning of the words "public place."

Many of the definitions given obviously do not apply and choosing the ones that would give some guidance one must look to the way the words are used in the ordinance. Within the context of our ordinance the following general definitions at pages 433-434, would seem to fit:

"A public place is a place where the public has a right to go and be. State v. Welch, 88 Ind. 308, 310."

"Public place is one attended by public for business, entertainment or similar reasons. State v. Robinson, Conn. Cir. A. D., 184 A. 2d 188, 189, 23 Conn. Sup. 430."

"A 'public place' which is a place where the public generally are permitted to assemble. Zimmerman v. State, 141 P. 2d 809, 811, 77 Okl. Cr. 374."

"In a prosecution for disturbing a public assemblage, an instruction was given that a public place is any place at which people assemble, or to which people commonly resort for the purposes of business, amusement, recreation, or other lawful purpose. Young v. State, Tex., 44 S. W. 507."

"The words 'public place' denote any place which a municipality or State maintains for the use of the public and includes not only public highways but parks and public

buildings and other places. Restatement, Torts, Sec. 417b."

"A 'public place,' within prohibition of solicitation in public place without license, is one which members of the public, by general invitation, attend for reasons of entertainment, business, instruction, or the like. *People ex rel. Friedman* v. *Framer*, 139 N. Y. S. 2d 331, 337."

"As applied to an inclosure, room, or building, a 'public place' must be considered as one in which by public invitation, members of the public attend for reasons of business, entertainment, instruction, or the like and are welcome as long as they conform to what is customarily done there. *People ex rel. Cheever* v. *Harding*, 72 N. W. 2d 33, 35, 343 Mich. 41."

"A 'public place' under the express provision of Pen. Code 1895, art. 335, Vernon's Ann. P. C. art. 475, within the meaning of preceding articles, is any public road, street, or alley of a town or city or an inn, tavern, store, grocery, or workshop or place at which people are assembled or commonly resort for the purpose of business, amusement, or recreation or other lawful purpose. *King* v. *Brown*, 94 S. W. 328, 329, 100 Tex. 109."

Therefore, it is the conclusion of the court that a minor may during the prescribed hours go anywhere he pleases as long as he stays in motion. This leads to a dilemma when he comes to a stop sign or traffic light. However, since a municipality is prohibited from enacting ordinances in conflict with the general laws of the state of Ohio, the legislative body apparently did not mean to define "remain" so stringently as to prohibit obedience to the traffic laws. Therefore, the court finds the ordinance prohibits the minor from stopping, staying or remaining on any public street or sidewalk (longer than is necessary to obey the traffic laws) parks, school house or grounds, playground, privately owned premises open to the public such as parks, playgrounds, parking lots, churches, theaters, dance halls, retail establishments, including restaurants during the time they are open to the public, the common public area of motels and hotels, including their lounges and dining rooms.

There are several exceptions to the ordinance all of which seem to be quite clear in their meaning except, "to a

minor upon an errand or other legitimate business directed by the minor's parent.''

"Errand" is defined as: (1) a particular business intrusted to an agent or messenger; (2) a special business, mission with a definite purpose.

"Legitimate" is defined as: lawful or permitted.

"Business" is defined as: (1) regular, habitual, occupation, trade, profession, followed for a livelihood; (2) (a) commercial transactions, trade, finance etc. contracted with one of the learned or liberal professions, (b) particular commercial enterprise; (3) that which has to be done, a special duty, or service imposed by a person's position, office, or circumstances.

The court interprets this exception to mean something that is directed by the parent and is furtherance of the parent's business or profession or for the benefit of the parent as opposed to being for the benefit of the minor.

The minor child attacks the ordinance as being violative of the minor's First Amendment rights and the "due process" and "equal protection" clauses of the Fourteenth Amendment.

That a minor has constitutional rights has been affirmatively decided by the Supreme Court of the United States. *In re Gault* (1967), 387 U. S. 1; *Tinker* v. *Des Moines Independent Community School District* (1969), 393 U. S. 503; *In re Winship* (1970), 397 U. S. 358; *Planned Parenthood* v. *Danforth* (1976), 428 U. S. 52, wherein, at page 74, the court states: "Constitutional rights do not mature and come into being magically when one attains the state-defined age of majority."

There are three questions to be determined. What are the constitutional rights of the minor that the ordinance allegedly violates? What standard or test is to be applied in determining whether the alleged violation is permissible, and, finally, does the proper test as applied to this ordinance support validity or invalidity?

First will be discussed the test to be applied. There are two tests which the Supreme Court has applied.

In regulatory legislation in the economic area the Supreme Court has upheld it if it was related by some "ra-

tional basis" to the furtherance of a legitimate state interest. *United States* v. *Carolene Prod. Co.* (1938), 304 U. S. 144.

First amendment rights have been subjected to a much stricter standard of judicial scrutiny. Legislation infringing on first amendment rights will be upheld only when it is shown to advance a *compelling* state interest.

The Supreme Court in *N. A. A. C. P.* v. *Button* (1963), 371 U. S. 415, at 438, stated:

"The decisions of this Court have consistently held that only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms."

Furthermore, when it is possible for a statute to be more narrowly drawn and thereby to avoid conflicts with first amendment rights the Supreme Court has declared it must be so drawn. *United States* v. *Robel* (1967), 389 U. S. 258.

The Supreme Court has held that minors have First Amendment rights. *Tinker* v. *Des Moines Independent Community School District, supra* (393 U. S. 503) (freedom of speech or expression). In *Prince* v. *Massachusetts* (1944), 321 U. S. 158, the court recognized that minors have the First Amendment right of freedom of religion.

However, the court in *Prince* also recognized that in case of minors the state may have a "compelling interest" when it would not as to adults.

Applying the foregoing principles to the ordinance, it is clearly unconstitutional in that it deprives minors of their First Amendment rights without any compelling state interest.

The ordinance prohibits the older minors from attending alone Christmas Eve Midnight Mass at the local Roman Catholic Church or Christmas Eve services at the various local Protestant Churches. It would likewise prohibit them from attending the New Years Eve watch services at the various churches. Likewise it would prohibit grandparents, uncles, aunts or adult brothers and sisters from taking their minor relatives of any age to the above mentioned services. There are probably many other religious services that mi-

nors are accustomed to attend during the prohibited hours but the above are so well known that they come readily to mind.

That the state could have no compelling interest in preventing a 17 year old from attending Mass on the most religious day of the year or a grandparent from taking his grandchild to church is an understatement. In fact there is not even any "rational basis" for the state to do so.

Under the ordinance, during nine months of the year a minor could not even attend the city council meetings if they ran past 10:30 (which they frequently do) to express his views on the necessity to repeal the curfew ordinance, clearly a deprivation of his First Amendment right to freedom of speech.

There are a host of other factual situations which one could hypothesize that would likewise show the ordinance to be in conflict with the First Amendment.

The Supreme Court has extended the stricter test of "compelling interest" to enactments that encroach upon any "fundamental right." See concurring opinion of Justice Goldberg in *Griswold* v. *Connecticut* (1965), 381 U. S. 479.

This court could find no one case that provides an all inclusive definition of what fundamental rights might be.

The Supreme Court in *Papachristou* v. *Jacksonville* (1972), 405 U. S. 156, in an unanimous decision seems to treat walking, strolling, wandering, loitering and loafing as being fundamental rights. See also Justice Douglas, concurring opinion in *Doe* v. *Bolton* (1973), 410 U. S. 179, wherein he termed the freedom to walk, stroll or loaf a fundamental freedom. See, also, Justice Marshall's dissent to denial of certiorari in *Bykofsky* v. *Borough of Middletown* (1976), 429 U. S. 964.

If the above are fundamental rights then attendance at plays, musicals, motion pictures, church functions, dances, obtaining food and drink, surely must be fundamental rights all of which are prohibited under the ordinance. The foregoing all being lawful innocent activities there can be no compelling state interest in their prohibition.

In analyzing the ordinance the court finds that it abounds with ridiculous results.

A minor male taking his date home after the curfew if he is fortunate enough to have a girl with a driveway can pull his car into her driveway and take his time bidding her goodnight because he is in a private place. If the girl does not have a driveway he must discharge her from the car while it is still moving for he dare not stop in the public place (street).

A minor may walk all over town as long as he keeps moving but dare not stand on the sidewalk in front of his own house at 10:31 P. M. on a balmy spring evening.

An employed minor who was required to be at work at 6:00 A. M. could not obtain breakfast at a local restaurant prior to going to work.

If grandparents would be traveling on U. S. 30 with their young grandchildren after 10:30 P. M. they could not stop at the L-K Restaurant for a bite to eat or if they stopped at the motel for the night and wanted to get an early start they could not take their grandchildren into the restaurant and give them breakfast before 6:00 A. M.

If minors attended the movie getting out at around 10:15 P. M. on a school night they could go to one of the fast food carryout restaurants and get a bag of food and drive around town until they had eaten it but could not go inside in a well lighted decent atmosprere and eat it.

The ordinance making no exception for anyone other than parents accompanying minors, a minor having no parents or having parents but being in the legal custody of others would indeed be in a bad way.

The above are just a few of the examples that come readily to mind but they are sufficient to illustrate the point.

The first case to declare a minor's curfew ordinance unconstitutional was *Ex parte McCarver* (Tex. Crim. App), 46 S. W. 936, decided in 1898. This case involved an ordinance prohibiting minors from being on the streets later than 15 minutes after the ringing of the curfew bell.

The court in striking down the ordinance stated at page 937:

. "The rule laid down here is as rigid as under military law, and makes the tolling of the curfew bell equivalent to the drum taps of the camp. In our opinion, it is an undue invasion of the personal liberty of the citizens as the boy or girl * * * have the same rights of ingress and egress that citizens of mature years enjoy."

The next case in point of time to consider a juvenile curfew case was a California case, *People* v. *Walton* (1945), 161 P. 2d 498. The ordinance prohibited remaining or loitering upon a public street. The court there specifically noted, at page 501, the provision in question was aimed at:

"* * * preventing such minors from tarrying and staying unnecessarily upon the streets and public places and does not restrict those minors who are using or are on such streets or places while actually in the process of going to or from places of business or amusement or otherwise."

This case was decided before *Gault* and its progeny, does not apply the correct test and is contrary to the later Supreme Court cases on loitering and obviously is a far different case than our ordinance which prohibits a minor from remaining in a place of business or amusement.

This was followed by an appellate court case also from California, *Alvis* v. *Justice Court of Chico Judicial District* (1957), 306 P. 2d 601. The ordinance prohibited minors from being in or on any public street, park, square or any public place. The court in holding the ordinance unconstitutional said, at page 605:

"True, the ordinance would preclude aimless loitering by minors in public places during the hours set forth, but it would also make unlawful many other activities by minors which otherwise would be entirely lawful. Paraphrasing the conclusion of the Court in the *Hall* Case, the general right of every person to enjoy and engage in lawful and innocent activity while subject to reasonable restriction cannot be completely taken away under the guise of police regulation. Any regulation to the contrary will be stricken down as an arbitrary invasion of the inherent

personal rights and liberties of all citizens. Thus, since it cannot be said that prohibition against the mere presence of a minor on a street or in a public place between the designated hours for a purpose other than required by his business, or unless accompanied by a parent or legal guardian, has any real or substantial relationship to the primary purpose of the statute, it therefore constitutes an unlawful invasion of personal rights and liberties, and for that reason is unconstitutional."

*Thistlewood* v. *Trial Magistrate* (1964), 236 Md. 548, 204 A. 2d 688, is the first case to apply a strict standard of review. While not saying so in so many words and reaching their result in a two step process the court actually applied the "compelling interest" test. Here, the court found such an interest to exist.

The ordinance was to meet an emergency and was in effect for only four nights of the year. There were three tests set up by the court. First, there had to be an evil. Second, the means selected to curb the evil had to bear a real and substantial relationship to the result sought. Third, the means availed of could not unduly infringe upon the fundamental rights of those whose conduct was curbed. Applying these tests to our ordinance would clearly result in finding it unconstitutional.

In 1966, the Ohio case of *Eastlake* v. *Ruggiero* (1966), 7 Ohio App. 2d 212, was decided by the Court of Appeals for Lake County. The ordinance in question prohibited minors from being upon the streets or sidewalks unless accompanied by a parent, guardian or some responsible person over the age of 21 or a member of his family over 18 or *unless* he has a legitimate excuse therefore. As seen previously "legitimate" means "lawful," and this is apparently the way the court applied it, for it said at page 215:

"While Section 583.02 of the Codified Ordinances of the city of Eastlake restricts minors from being upon public streets or sidewalks during designated nighttime periods, the ordinance is not an absolute prohibition against minors being present upon the public streets or sidewalks

during such nighttime periods. Exceptions are made if the minor is accompanied by his parent, guardian or responsible person over twenty-one years or a member of his family over a eighteen years, or if the child has a legitimate excuse. Thus, there is no curtailment of normal or necessary juvenile nighttime activities. Therefore, we hold that the part of this ordinance applying to minors is constitutionally valid.''

What the court would consider normal activities is not stated but if attendance at church functions, theatre, dances, business establishments and other lawful activities are considered normal then we have a much less restrictive ordinance than the one with which we are concerned. This case was decided prior to *Gault* and seems to assume that minors have much less constitutional rights than adults. In light of *Gault* and subsequent cases this is an erroneous assumption. It relies on *Thistlewood* when in fact the tests set forth in *Thistlewood* would mandate the Eastlake ordinance to be found unconstitutional there being no emergency or limited application present in this case. It certainly does not apply the ''compelling interest'' test and this court rejects its reasoning as not meeting the requirements of the modern day Supreme Courts pronouncements.

*In re C.* (1972), 28 Cal. App. 3d 747, was another California case in which the court interpreted the ordinance as only prohibiting loitering on the street and upheld it. Under the rationale of *Papachristou* v. *Jacksonville, supra* (405 U. S. 156), it would seem that this type of ordinance is now unconstitutional.

The Supreme Court of Hawaii in *In re Doe,* 513 P. 2d 1385, and the Supreme Court of Washington in *Seattle* v. *Pullman,* 514 P. 2d 1059, both decided in September 1973, held juvenile curfew ordinances to be unconstitutional. In the Hawaii case the prohibition was against loitering in a public place. The court held the statute invalid for being too vague and because its broad sweep has the effect of inhibiting otherwise lawful conduct.

The Washington case concerned an ordinance making it unlawful for a minor to loiter, idle, wander, or play on or in the streets, sidewalks, highways, alleys, parks, or

other public places or in an automobile or other conveyance or in or upon unoccupied premises or grounds. Going by a direct route to or from religious or educational activities was excepted.

The court declared at page 1063:

" 'It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or stand still.'

"* * * it bears no real or substanatial relationship to the proclaimed governmental interest—the protection of minors.

"This ordinance makes no distinction between conduct calculated to harm and that which is essentially innocent and is thereby an unreasonable exercise of the police power."

The court goes on to say, at page 1064, that:

"The * * * ordinance * * * attempts to make criminal, activities which are normally deemed innocent. This the municipality cannot do under the claim of its police power. The fact that we have a minor curfew ordinance, in which the above innocent behavior is prohibited, does not alter the conclusion. The government has an interest to protect minors from 'abuses' (*Prince* v. *Massachusetts,* 321 U. S. 158, 165, 64 S. Ct. 438, 88 L. Ed. 645 (1944)), but what are the abuses here? It cannot be said that prohibition against the mere loitering, wandering, idling or playing of a minor in a public place or conveyance during the curfew hours (but for the circumstances exempted in the proviso) has the requisite connection to the ordinance's alleged purpose of protecting minors. We must speculate as to the abuses to be avoided, but the invasion of protected freedoms is not speculation, it is very real," and concludes the ordinance has an insufficient relationship to safeguarding minors and is unconstitutional.

In 1975, an Illinois appellate court decided *People* v. *Chambers,* 335 N. E. 2d 612, and held the state of Illinois statewide juvenile curfew statute unconstitutional. That statute prohibited a minor from being present at or upon any public assembly, building, place, street or highway.

The court discusses and rejects the line of cases that

assume that minors have a different set of constitutional rights than adults and stated, at page 617:

"Since the decision in the case of *Application of Gault,* 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), which required that the demands of due process be satisfied by the procedures followed in state juvenile justice systems, it has been clear that the due process clause of the Fourteenth Amendment applies in like manner to juveniles and adults."

The court then finds that the statute violated the First and Fourteenth Amendment and that the rights violated by the statute were fundamental rights and stated:

"We therefore believe a compelling emergency must exist before such a curfew may be imposed, and its imposition should be tolerated only so long as the emergency exists."

The court concludes, at page 618:

"In our opinion, the Illinois curfew law which restrains a segment of our society from freely walking the streets when no emergency exists is incompatible with the basic principles upon which free societies are founded. Since the curfew statute violates the basic spirit of a free society as well as the specific constitutional guarantees noted above, it violates both the federal and state constitutions."

That same year a case decided by a Federal District Court for the Middle District of Pennsylvania, *Bykofsky v. Borough of Middletown* (1975), 401 F. Supp. 1242, holds a curfew ordinance to be constitutional in its main parts. The case was affirmed without opinion by the Circuit Court of Appeals and certiorari was denied by the United States Supreme Court.

This ordinance prohibited being or remaining in or upon the streets. It was very narrowly drawn ordinance of many pages with eleven exceptions and was very carefully drafted in an attempt to pass constitutional muster. It specifically excepted exercise of First Amendment rights, travel in a motor vehicle and returning home by a direct route from religious, school or voluntary association activities.

There is almost no similarity between the Van Wert ordinance and the Middletown ordinance. The Van Wert ordinance prohibits all activity in any public place while the Middletown prohibits none except on the street. The Van Wert ordinance permits walking or bicycling while the Middletown curfew prohibits it except within 1/2 hour of certain activities. Both permit travel by vehicle. The only similarity is that they both prohibit remaining or loitering on the street.

The court in a lengthy opinion declared certain portions of the ordinance "unconstitutional" but upheld the main parts. He refused to apply the "compelling interest" test finding that no "fundamental rights" of the minors were involved, apparently by reason of the many exceptions. The court then applied the "rational basis" test finding same to be present.

This court would reach a contrary result in regard to the loitering and freedom of movement portions. However, it is apparent from a study of that court's opinion that had the Van Wert ordinance been before him, it would have been declared unconstitutional.

Thus we have contradictory results in the various cases. Those case uspholding the constitutionality of juvenile curfew ordinances have proceeded on the assumed basis that somehow or other minors have less constitutional rights than adults and have contained language stating in various terms the vague assumption without any analysis that somehow the ordinances were good for the community and therefore proper.

In light of *Gault* and subsequent eases this is not permissible.

While there have been cases upholding the constitutionality of various types of curfew ordinances the court could not find a single case in the United States upholding one that was as restrictive as the Van Wert Ordinance.

The court holds the ordinance in question deprives a minor of his rights under the due process clause of the Fourteenth Amendment, that these rights are fundamental rights and that there is no "compelling state interest"

shown. Therefore for this additional reason the ordinance is invalid.

There are still two more constitutional infirmities in the ordinance. The ordinance exempts minors who have graduated from an accredited high school. The court cannot find any rational basis in the avowed purpose of the ordinance, the protection of minors, for this distinction. It is therefore in addition violative of the equal protection clause of the Fourteenth Amendment.

The ordinance provides that the chief of police may grant permission to a group desiring to hold late night activities. It states that "the granting of permission shall be within the exclusive discretion of the Chief of Police." It provides no standards at all to guide the chief of police and leaves it up to his own personal predilections and beliefs. This is an unconstitutional delegation of legislative authority and is unconstitutionally vague.

The prosecuting attorney filed a motion for reconsideration based upon the court not having considered the 1965 version of the curfew ordinance, it being ordinance 4306-65 passed December 13, 1965.

The ordinance enacted in 1965 was significantly different than the later codified version.

In 1975 the city of Van Wert revised and codified its ordinances and caused them to be printed and published as the general and permanent Codified Ordinances of the city of Van Wert. In carrying out the foregoing the city of Van Wert enacted Ordinance No. 5234-75 which clearly repealed all previous ordinances in conflict or inconsistent with any part of the revised and codified ordinances.

Therefore, the only ordinance now in effect is the revised and codified Ordinance 509.08 which is the one which the court did consider.

Had not the city council enacted such a repeal due process would prohibit the court from considering the earlier version of the ordinance.

Even if the court were permitted to consider the earlier version of the ordinance it would not aid in finding the ordinance to be valid on constitutional grounds.

The earlier version contained a definition of "remain"

and therefore provided that no minor shall loiter, idle, wander, stroll or play in or upon a public place or establishment (substituting the words of the definition for the word "remain").

The United States Supreme Court in *Papachristou* v. *City of Jacksonville, supra* (405 U. S. 156), makes absolutely clear than an ordinance prohibiting loitering, idling, wandering and strolling which were specifically discussed in that opinion was unconstitutional for vagueness and overbreadth. The only part of the 1965 version of the Van Wert ordinance not discussed in *Papachristou* was playing. However, it is abundantly clear that if it is unconstitutional to prohibit loitering, idling, wandering and strolling it is unconstitutional to prohibit playing. If the 1965 version would be deemed to be in effect it is unconstitutional on authority of *Papachristou*.

The ordinance being invalid, the motion to dismiss is sustained and the complaint ordered dismissed.

*Complaint dismissed.*

WISE, J., of the General Division sitting by request in the Juvenile Division.