**CITY OF MAQUOKETA, Appellee,**

v.

**Becki J. RUSSELL, Appellant.**

**CITY OF MAQUOKETA, Appellee,**

v.

**Jennifer L. CAMPBELL, Appellant.**

No. 91–372.

Supreme Court of Iowa.

April 15, 1992.

Mark R. Lawson, Maquoketa, for appellants.

Mike Kane, Maquoketa, for appellee.

LAVORATO, Justice.

In this case two minors challenge the constitutionality of a municipal curfew ordinance. The minors raise four constitutional issues associated with curfew ordinances that were left unresolved by our recent decision in *City of Panora v. Simmons*, 445 N.W.2d 363 (Iowa 1989). The conclusion we come to today requires us to reach only one: whether the curfew ordinance in question is invalid because it is unconstitutionally overbroad. Because we conclude the ordinance is unconstitutionally overbroad, we declare it invalid. Our conclusion requires us to reverse the minors' convictions under the ordinance.

I. *Factual Background.*

On August 26, 1990, Becki J. Russell and Jennifer L. Campbell—both minors—attended a teen dance in Maquoketa. They had the permission of their parents to go to the dance. Jennifer's mother dropped them off at the event. Around 10:30 p.m., both minors left the dance and walked around town. They eventually arrived at the Fareway store parking lot, located within the city. For a short while they visited with friends in the parking lot. The Maquoketa police arrived and asked that they leave the lot.

The two minors left as they were asked to do and walked to the Pamida store parking lot on the outskirts of the city. Again the two minors visited with friends. Specifically, they met Todd Kinion, also a minor. Todd had a car.

The three left the parking lot in Todd's car. This was after 12:30 a.m. They drove through town once. While retracing their route, they drew the attention of Craig Jackson, a Maquoketa police officer.

Jackson suspected that the car had been speeding, although he did not have a radar check of the car's speed. Jackson followed Todd's car and found it parked in a driveway. Jackson asked the trio what they had been doing, and Todd responded that they were "cruising." Jackson found no evidence of alcohol, drugs, or any other illegal activity in the car.

Jackson did not issue a citation to Todd for speeding. Instead he told all three minors that they were under arrest for violating the Maquoketa curfew ordinance. Jackson then drove the three to the Maquoketa police station.

Once at the station, Becki and Jennifer were placed in separate rooms. Jackson tried to reach Jennifer's mother by phone, but received no answer. Another officer attempted to reach Becki's parents but was equally unsuccessful because her parents had no telephone.

Eventually the police took Becki and Jennifer to Jennifer's house where they dropped the pair off. This was about 1:15 a.m.

II. *Procedural Background.*

Becki and Jennifer pleaded not guilty to charges of violating the city's curfew ordinance, No. 3-1-6. Later the two filed a motion to dismiss and challenged the con-

stitutionality of the ordinance on several grounds.

Following a hearing, the magistrate overruled these constitutional challenges and found Becki and Jennifer guilty. The magistrate levied a fine of $10 and assessed a $2 surcharge and $20 in court costs against each one.

Becki and Jennifer appealed to the district court which upheld the magistrate's ruling on the constitutionality of the ordinance and on the convictions. The two minors then filed an application for discretionary review by this court, which we granted. *See* Iowa Code §§ 814.6(2)(d) and 814.6(2)(e) (1989).

## III. *The Unconstitutionally Overbroad Issue.*

In response to our *City of Panora* decision which upheld the constitutionality of a municipal curfew ordinance on narrow grounds, the Maquoketa city council adopted ordinance number 3–1–6 on November 6, 1989. This ordinance provides in pertinent part:

CURFEW:

1. It shall be unlawful for any person under the age of 18 (eighteen) years to be upon any streets, sidewalks, or public places in the City of Maquoketa, Jackson County, Iowa, between the hours of 11:00 p.m. and 6:00 a.m. the following day unless the person under 18 (eighteen) years of age is accompanied by his parent or guardian or other adult person having the care and custody of the minor at the direction of the parent or guardian; however, it shall not be unlawful if the person under the age of 18 (eighteen) is traveling a direct route between home and bona fide employment or between home and a parentally approved supervised activity.

2. It shall be unlawful for any parent or guardian or other adult person having care and custody of a person under the age of 18 (eighteen) to allow or permit the minor to violate paragraph 1 of this section.

Becki and Jennifer mount a facial challenge to the ordinance. They claim the ordinance is unconstitutionally overbroad and therefore violates the due process clause of the Fourteenth Amendment to the United States Constitution. The city counters that the two minors lack standing to raise the overbreadth claim. In the alternative, the city urges that the ordinance is not unconstitutionally overbroad. For reasons that follow, we think the ordinance here is unconstitutionally overbroad.

■ A. *Limited scope of overbreadth application.* We have said that a statute is unconstitutionally overbroad

if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.

*State v. Pilcher*, 242 N.W.2d 348, 353 (Iowa 1976). Overbreadth analysis is further confined to the alleged denial of First Amendment rights. *See* `Moose Lodge #107 v. Irvis*, 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627, 634 (1972). And the chilling of First Amendment rights must be substantial. *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439, 460 (1974).

The due process clause of the Fourteenth Amendment to the United States Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The fundamental concept of liberty embodied in this due process clause embraces the liberties guaranteed by the First Amendment to the United States Constitution. So the Fourteenth Amendment protects those First Amendment liberties from encroachment by the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–18 (1940).

■ B. *The standing issue.* The city contends that, to establish substantial infringement, Becki and Jennifer cannot hypothesize situations where this ordinance could affect the First Amendment rights of other minors. Simply put, the city is saying that the two minors cannot facially

challenge the ordinance on the ground of overbreadth. The city thinks the minors are limited to showing how the ordinance under the facts of this case violated their constitutional rights. This, of course, is the "as applied to" concept used in constitutionally challenging statutes.

Other courts faced with this question have decided contrary to what the city contends. For example, *In re J.M.*, 768 P.2d 219, 224 (Colo.1989), recognized an exception to the general standing requirements for facial challenges in First Amendment cases:

> In general, a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. *In First Amendment cases, however, the rules of standing are broadened to permit a party to assert the facial overbreadth of statutes or ordinances which may chill the constitutionally protected expression of third parties, regardless of whether the statute or ordinance could be applied constitutionally to the conduct of the party before the court.*

(Emphasis added) (citations omitted). *Accord City of Milwaukee v. K.F.*, 145 Wis.2d 24, 40, 426 N.W.2d 329, 336 (1988) ("[I]n asserting an overbreadth challenge an individual may hypothesize situations in which a statute or ordinance would unconstitutionally intrude upon the First Amendment rights of third parties."). We recently confirmed our agreement with this conclusion when we stated that "an overbroad governmental regulation may be invalid on First Amendment grounds *even when the litigant's activity is not itself constitutionally protected.*" *State v. Todd*, 468 N.W.2d 462, 466 (Iowa 1991) (emphasis added) (citations omitted).

C. *Substantial implication of minors' First Amendment rights.* In *City of Panora*, the curfew ordinance made it unlawful for any minor "to be or remain upon" any of the alleys, streets, or public places, or places of business and amusement in the city between 10:00 p.m. and 5:00 a.m. The

ordinance provided an exception for any minor who was accompanied by a guardian, parent, or other person charged with the care and custody of such minor, or other responsible person over eighteen years of age. The ordinance also excepted from its provisions any minor who was "traveling between his home and the place where any approved place of employment, church, municipal or school function is being held." *City of Panora*, 445 N.W.2d at 364.

This court held that the ordinance was a valid exercise of the city's powers designed to protect the safety and welfare of its children. *Id.* at 369. Pivotal to that holding was this court's determination that the "minor's right of intracity travel is not a fundamental right for *due process* purposes." *Id.* (emphasis added). This allowed the court to use a rational basis analysis rather than the more stringent strict scrutiny analysis. *See id.* at 367, 369. Using the easy-to-meet rational basis analysis, this court had little trouble finding a rational relationship between "the goals of the ordinance and the means chosen" to further those goals. *Id.* at 369. This court perceived those goals to include "protecting minors from the national epidemic of drugs." *Id.* at 370. Of course, the curfew ordinance constituted the means chosen to further this goal. *Id.*

This court was very careful to point out that it was not deciding whether the ordinance was unconstitutionally overbroad or whether the right to travel was in some instances protected by the First Amendment:

> The motion to dismiss in district court, both before the magistrate and the district judge, raised several constitutional issues but did not raise many of the issues frequently confronting courts in curfew cases, including equal protection, overbreadth, and interference with First Amendment rights. Simmons attacked the ordinance only on the grounds of vagueness, unconstitutional interference with parenting rights, and unconstitutional interference with Simmons' rights of "gathering, walking or loitering," and our consideration of the ordinance is limited accordingly. Contrary to the asser-

tions of the dissent, *the First Amendment was not mentioned in the motion to dismiss. The right to "gather, walk, or loiter" asserted by Simmons was not claimed in the context of speech or association, such as would be found in a protest march or similar form of "travel."*

*Id.* at 365 (emphasis added).

Whenever the First Amendment rights of freedom of religion, speech, assembly, and association require one to move about, such movement must necessarily be protected under the First Amendment. Restricting movement in those circumstances to the extent that First Amendment rights cannot be exercised without violating the law is equivalent to a denial of those rights. One court has eloquently pointed this out:

We would not deny the relatedness of the rights guaranteed by the First Amendment to freedom of travel and movement. If, for any reason, people cannot walk or drive to their church, their freedom to worship is impaired. If, for any reason, people cannot walk or drive to the meeting hall, freedom of assembly is effectively blocked. If, for any reason, people cannot safely walk the sidewalks or drive the streets of a community, opportunities for freedom of speech are sharply limited. Freedom of movement is inextricably involved with freedoms set forth in the First Amendment.

*Ervin v. State*, 41 Wis.2d 194, 200, 163 N.W.2d 207, 210 (1968). *See also* Note, *Assessing the Constitutional Validity of Juvenile Curfew Statutes*, 52 Notre Dame Law. 858, 866 (1977) ("Even if [freedom of movement is] not viewed as a First Amendment right, if restrictions on movement have a direct or incidental impact on other First Amendment rights, more than a rational relation to a legitimate state purpose is needed to justify the restrictions.").

It is too late in the day to say that minors do not have constitutional rights under the federal Constitution. *See, e.g., Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788, 808 (1976) (establishing minors have a right of privacy) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."); *Breed v. Jones*, 421 U.S. 519, 527–29, 95 S.Ct. 1779, 1784–85, 44 L.Ed.2d 346, 354–55 (1975) (establishing minors have protection against double jeopardy); *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368, 377–78 (1970) (requiring proof beyond a reasonable doubt in delinquency proceedings involving charges of acts that would be criminal offenses if committed by an adult); *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 509–14, 89 S.Ct. 733, 737–40, 21 L.Ed.2d 731, 740–42 (1969) (recognizing that minors have First Amendment rights of free speech and expression) (school regulation prohibiting students from wearing black armbands to publicize their objections to hostilities in Vietnam violated students' rights of free speech under First Amendment); *In re Gault*, 387 U.S. 1, 29–31, 13, 87 S.Ct. 1428, 1444–45, 1436, 18 L.Ed.2d 527, 547–48, 538 (1967) (establishing that minors have a right to court-appointed counsel, notice, confrontation, and cross-examination) ("whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone").

However, in a plurality opinion the United States Supreme Court recognized that minors' constitutional rights are not always coextensive with those of adults:

The unique role in our society of the family, the institution by which "we inculcate and pass down many of our most cherished values, moral and cultural," requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children. *We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the*

*importance of the parental role in child rearing.*

*Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797, 807 (1979) (emphasis added) (citation omitted). In *City of Panora,* this court applied the first *Bellotti* factor—"peculiar vulnerability" of children—in upholding the curfew ordinance there against a Fourteenth Amendment due process challenge. *City of Panora,* 445 N.W.2d at 369.

As was the case in *City of Panora,* the key question here is whether the Maquoketa curfew ordinance implicates fundamental rights. And, as we recognized in that case,

> [i]f a fundamental right is infringed, the level of judicial scrutiny is raised from a rational relationship test to one of strict scrutiny. In that case, the statute will survive a constitutional challenge only if it is shown that the statute is narrowly drawn to serve a compelling state interest.

*City of Panora,* 445 N.W.2d at 367.

The fundamental rights allegedly implicated by the ordinance here are freedom of religion, speech, assembly, and association. All but association are expressly mentioned in the First Amendment. All are within the term "liberty" as protected by the due process clause of the Fourteenth Amendment against infringement by the states. The United States Supreme Court has said so in a number of cases over the years. *See, e.g.,* 16A Am.Jur.2d *Constitutional Law* §§ 454, 457, 558, at 231, 239, 470 (1979).

In this country it is axiomatic that

> [f]reedom of religion is a fundamental, natural, absolute right, deeply rooted in the American constitutional system, and one of high rank. It is a right available to all.... The constitutional provisions prohibiting abridgment of religious freedom ... are to be broadly interpreted.... The courts will, where possible, avoid any construction of legislation that would result in the legislation appearing in any manner to interfere with the free exercise and enjoyment of religious pro-

fession and worship which is protected by constitutional guarantees.

16A Am.Jur.2d *Constitutional Law* § 465, at 264–65, 266 (1979).

Political expression and *political association* are likewise fundamental rights under the First Amendment. *Buckley v. Valeo,* 424 U.S. 1, 14–15, 96 S.Ct. 612, 632–33, 46 L.Ed.2d 659, 685 (1976). As to political expression the Court in *Buckley* said:

> Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people."

*Buckley,* 424 U.S. at 14, 96 S.Ct. at 632, 46 L.Ed.2d at 685 (citation omitted).

As to political association, the Court left no doubt that

> the First and Fourteenth Amendments guarantee "freedom to associate with others for the common advancement of political beliefs and ideas," a freedom that encompasses "[t]he right to associate with the political party of one's choice."

*Id.* at 15, 96 S.Ct. at 633, 46 L.Ed.2d at 685 (citations omitted). The First Amendment also protects as a fundamental right the freedom to engage in associations for the advancement of economic, religious, or cultural matters. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488, 1498–99 (1958).

Under the assembly guarantee in the First Amendment, persons may gather peacefully for almost any lawful purpose. *Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678, 1680–81, 14 L.Ed.2d 510, 513–14 (1965). And it cannot be made a crime to participate in peaceful assembly. *De Jonge v. Oregon,* 299 U.S. 353, 364–66, 57 S.Ct. 255, 260–61, 81 L.Ed. 278, 283–84 (1937). So assembly for marches, demonstrations, and picketing have been protected as lawful assemblies. *Hague v. CIO,*

307 U.S. 496, 512–13, 59 S.Ct. 954, 962–63, 83 L.Ed. 1423, 1435–36 (1939). They are therefore included under the rubric "fundamental rights."

 With all these principles in mind we begin our analysis to determine whether the ordinance substantially chills First Amendment rights. As we view the ordinance it would prohibit older minors from attending alone any church services beyond 11:00 p.m. *Cf. In re Mosier*, 59 Ohio Misc. 83, 89–90, 394 N.E.2d 368, 372 (1978) (holding that curfew ordinance deprived minor of First Amendment right of religion because it prohibited older minors from attending church services like midnight mass at Catholic churches or Christmas Eve services at Protestant churches).

Unlike the city, we do not think the exception "a parentally approved supervised activity" in the ordinance protects minors from arrest when returning home from these services past 11:00 p.m. At best, we think this exception contemplates those events in which adults are physically present for the specific purpose of overseeing or chaperoning minors. School dances with parents present supervising these activities are a good example. Church services though can hardly be said to fit in this category.

At worst, we think this exception is vague from the standpoint of (1) the minor who is arrested, (2) the police officer who is enforcing the ordinance, and (3) the fact finder who must determine guilt or innocence. As the two minors ask: "What is a parentally approved supervised activity?" "Which parents need to approve—the minor's parents or a group of parents sponsoring an event for juveniles?" "Who must supervise the activities—parents, adults, other minors, the police?" "What constitutes appropriate supervision?" "What is an acceptable activity?" The ordinance gives no hint on any of these questions. In our view, too much opportunity arises for selective enforcement. *See Pilcher*, 242 N.W.2d at 354 (when First Amendment becomes involved, concepts of vagueness and overbreadth become intertwined because a law which is vague may chill the valid exercise of constitutional rights).

The ordinance makes no exception for seventeen-year-olds who are eligible to vote at precinct caucuses. *See* Iowa Code § 43.-91. In Iowa, caucuses traditionally are held in the evenings, and a seventeen-year-old returning home from such an event lasting beyond 11:00 p.m. would be in violation of the ordinance. Like church services, caucuses do not fit neatly within the parameters of "a parentally approved supervised activity."

City council meetings provide another example. A minor who appears at a city council meeting to advocate for repeal of this ordinance would be subject to arrest if the meeting lasted beyond 11:00 p.m. *Cf. In re Mosier*, 59 Ohio Misc. at 90, 394 N.E.2d at 372 ("Under the ordinance, during nine months of the year a minor could not even attend the city council meetings if they ran past 10:30 (which they frequently do) to express his views on the necessity to repeal the curfew ordinance, clearly a deprivation of his First Amendment right to freedom of speech.").

Emancipated minors are not exempt from the provisions of the ordinance. No provision, for example, is made in the ordinance for such minors returning home from a late labor union meeting lasting past 11:00 p.m. The same can be said for any emancipated minor who might belong to any association for the advancement of economic, religious, or cultural matters. *NAACP*, 357 U.S. at 460–61, 78 S.Ct. at 1170–71, 2 L.Ed.2d at 1498–99. Freedom of association is clearly implicated in these circumstances.

In this new age of protests and demonstrations, emancipated minors would be prohibited from marches, demonstrations, sit-ins, and prayer vigils lasting past 11:00 p.m. So would unemancipated minors. Freedom of assembly is implicated here too.

We recognize that an ordinance which restricts minors' rights to an extent greater than it restricts adults' rights may be sustained if the State or municipality demonstrates that it protects minors' peculiar vulnerability, accounts for their lesser abili-

ty to make sound judgments, and reflects society's deference to the guiding role of parents. *Bellotti*, 443 U.S. at 634, 99 S.Ct. at 3043, 61 L.Ed.2d at 807. Though minors possess fundamental constitutional rights, their rights are not "automatically coextensive with the rights of adults." *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549, 558 (1986). But as the foregoing examples demonstrate, the ordinance here is not drawn narrowly to provide exceptions for emancipated minors and fundamental rights under the First Amendment. For these reasons we think the ordinance is unconstitutionally overbroad.

Several courts have addressed overbreadth challenges to curfew ordinances similar to the one here. Most have held the ordinances to be unconstitutionally overbroad. *See, e.g., Johnson v. City of Opelousas*, 658 F.2d 1065, 1071–74 (5th Cir. 1981); *McCollester v. City of Keene*, 586 F.Supp. 1381, 1384–86 (D.N.H.1984); *Alves v. Justice Court*, 148 Cal.App.2d 419, 422–25, 306 P.2d 601, 604–05 (1957); *K.L.J. v. State*, 581 So.2d 920, 921 (Fla.Dist.Ct.App. 1991); *In re Doe*, 54 Haw. 647, 647–54, 513 P.2d 1385, 1386–89 (1973); *Allen v. City of Bordentown*, 216 N.J.Super. 557, 564–69, 524 A.2d 478, 482–84 (1987); *Hayes v. Municipal Court*, 487 P.2d 974, 978–81 (Okla. Crim.App.1971). *See also* Note, *Assessing the Scope of Minors' Fundamental Rights: Juvenile Curfews and the Constitution*, 97 Harv.L.Rev. 1163, 1165 n. 11 (observing that curfew ordinances are inherently susceptible to attack on overbreadth grounds).

In two cases in which the overbreadth challenge was not sustained, the ordinance was drawn narrowly to protect First Amendment rights. *See, e.g., Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242, 1258–62 (M.D.Pa.1975), *aff'd mem.*, 535 F.2d 1245 (3d Cir.), *cert. denied*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976); *In re J.M.*, 768 P.2d at 224–25.

In another case the court upheld a statewide curfew ordinance against an overbreadth challenge on three grounds. First, the State has a "traditional" right to restrict the rights of minors as to time, place, and circumstances as a means to protect its children. Second, a minor's right of association as to who, when, and where is not absolute. Last, statistics show an alarming increase in juvenile crime nationwide, justifying the statewide application of the curfew law. *See People v. Chambers*, 66 Ill.2d 36, 4 Ill.Dec. 308, 310–12, 360 N.E.2d 55, 57–59 (1976).

Along the same lines, another court found that a curfew ordinance was drawn as narrowly as practicable because the ordinance only restricted juvenile activity in "public places" for only a narrow period of time. *City of Milwaukee*, 145 Wis.2d at 46, 426 N.W.2d at 339.

We do not find the *Chambers* and *City of Milwaukee* cases persuasive. We think both cases gloss over the need to draw curfew ordinances narrowly to avoid infringement of fundamental rights under the First Amendment.

### IV. *Disposition.*

Because the ordinance here is unconstitutionally overbroad, we reverse the two convictions in this case.

REVERSED.