Steven M. **WETTACH**, Appellant,

v.

**IOWA BOARD OF DENTAL EXAMINERS**, Appellee.

No. 93–1759

Supreme Court of Iowa.

Nov. 23, 1994.

Thomas J. Vilsack of Bell & Vilsack, Mt. Pleasant, for appellant.

Bonnie J. Campbell, Atty. Gen., and Theresa O'Connell Weeg, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN and TERNUS, JJ.

ANDREASEN, Justice.

Dentist appeals district court's affirmance on judicial review of disciplinary action against him. The court found the statute under which the dentist was disciplined was not unconstitutionally vague or overbroad. We affirm.

I. *Background.*

Dr. Steven Wettach and his wife, Dr. Mary Wettach, practice dentistry together in Mount Pleasant, Iowa. Mary was subject to disciplinary proceedings by the Board of Dental Examiners (Board) regarding her competency to practice dentistry. Finding that she failed to maintain a reasonably satisfactory standard of competency, the Board placed her on probation for two years and ordered her to complete a comprehensive continuing education program. Specifically, the Board found she incompetently caused fifteen filling overhangs including seven

gross overhangs, misdiagnosed decay on several patients, left behind large amounts of calculus after cleaning the teeth, left a large distal defect under a porcelain-fused-to-metal crown, and ordered a partial denture to be placed over diseased abutment of teeth.

In anticipation of the Board's discipline of his wife, which he expected to receive publicity, Steven sent a letter to their friends and patients defending her. He admits that the letter was intended to convince clients not to seek dental care elsewhere.

The letter stated that Mary was "reprimanded for a minor thing called an overhang on a filling." He inaccurately indicated that overhangs are easily corrected, despite his knowledge that sometimes complete replacement of the filling accompanied by anesthesia is necessary to correct overhangs. The letter did not indicate that Mary was being disciplined for reasons in addition to the overhangs.

The letter also misrepresented the opinion of Dr. Gordon Christensen, who testified as an expert in Mary's behalf at her disciplinary proceedings. The letter stated that Christensen had suggested that "in 25 years as an expert, he had never seen such a miscarriage of justice by a dental board of examiners, and that this was perhaps the result of someone with a personal vendetta." Christensen said the letter misquoted him. He never characterized the Board's action as a miscarriage of justice, and he had in fact agreed that supervision of Mary's dentistry and remedial training were appropriate. He had also indicated that some of the overhangs she left fell below the standard of care. Additionally, the Board found there was no evidence to support an allegation of a personal vendetta.

The letter also suggested that the Board merely "inferred that optimal dentistry was not done." The Board clearly determined that the dental treatment was below the standard of care. The letter also stated:

Ironically, nearly half of the treatment in question was not done by Mary, but by other dentists. You will have to take my word for the fact that the treatment that she was responsible for was not standard as it may appear in the paper.

This statement also misrepresented the Board's findings. The Board investigated the treatment of thirteen patients. It specifically found that Mary was the treating dentist for eleven of these patients and that her work fell below the standard of care.

The Board found that the letter contained many inaccurate and misleading statements about the disciplinary action against Mary, that the letter was sent in an attempt to preserve Steven's relationship with his patients, and that those receiving the letter could have been misled as to the nature and seriousness of the disciplinary action against Mary. The Board found the conduct constituted "dishonorable conduct" in violation of Iowa Code section 153.34(7) (1991). Because of mitigating circumstances, the Board determined no further disciplinary sanctions were warranted.

During his hearing Steven moved to dismiss the proceedings arguing that his letter was protected speech under the First Amendment of the United States Constitution and that the statutory provision he was charged under was void for vagueness and unconstitutionally overbroad. The Board rejected his claims. He petitioned for judicial review of the Board's decision, asserting various grounds for reversal. The district court affirmed the Board's decision. Steven now appeals only the vagueness and overbreadth issues.

Our scope of review is de novo. *Fisher v. Board of Optometry*, 510 N.W.2d 873, 875 (Iowa 1994).

## II. *Vagueness.*

Steven challenges the language of Iowa Code section 153.34(7), which allows the Board to suspend or revoke the license of a licensed dentist "[f]or ... dishonorable or unprofessional conduct in the practice of dentistry." He argues the statute does not sufficiently warn him of what constitutes "dishonorable conduct." No rule or statute defines "dishonorable conduct."

A civil statute is unconstitutionally vague under the due process clauses of the Fifth and Fourteenth Amendments of the

United States Constitution and article I, section 9 of the Iowa Constitution if its language does not convey a sufficiently definite warning of proscribed conduct as measured by common understandings or practice. A statute is unconstitutionally vague when persons must necessarily guess at the meaning of a statute and its applicability. *Fisher,* 510 N.W.2d at 875; *Eaves v. Board of Medical Examiners,* 467 N.W.2d 234, 236 (Iowa 1991); *Knepper v. Monticello State Bank,* 450 N.W.2d 833, 838 (Iowa 1990).

██ Statutes are presumed constitutional and the party asserting vagueness must negate every reasonable basis on which the statute can be sustained. *Eaves,* 467 N.W.2d at 236. Literal exactitude or precision is not necessary. "If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints on judicial legislation, the statute must be interpreted in that way." *Knepper,* 450 N.W.2d at 838 (citation omitted).

We note that "in regulating certain matters a degree of indefiniteness is necessary to avoid unduly restricting the applicability of the proscribed rule." *Eaves,* 467 N.W.2d at 236 (citation omitted). We have also recognized that regulation of the medical profession requires flexibility because the limits between good and bad professional conduct can never be clearly marked. *Id.; Fisher,* 510 N.W.2d at 875. It would simply be "impossible to catalog all the types of professional misconduct." *Eaves,* 467 N.W.2d at 236. The same concerns apply in the regulation of the profession of dentistry.

██ We think it is clear that Steven's actions were dishonorable. Misrepresenting the Board's action against his dental partner in an attempt to retain patient patronage is "dishonorable conduct." His actions were specifically improper because the misrepresentation was likely to mislead patients about the nature and severity of the action against Mary. Because Steven's conduct falls under the statute, he cannot prevail in his vagueness challenge. "A person who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to hypothetical conduct." *Knepper,* 450 N.W.2d at 839 (citation omitted).

### III. *Overbreadth.*

Although Steven does not claim on appeal that his letter constituted protected speech under the First Amendment, he does challenge Iowa Code section 153.34(7) as being constitutionally overbroad to the extent the statute is used to restrict speech and publication by dentists. He seems to base his argument on the claim that section 153.34(7) would chill criticism of Board decisions, which he asserts would be protected speech.

██ A statute is overbroad "if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *State v. McKnight,* 511 N.W.2d 389, 396 (Iowa 1994), *cert. denied,* — U.S. ——, 114 S.Ct. 2116, 128 L.Ed.2d 675 (1994) (quoting *City of Maquoketa v. Russell,* 484 N.W.2d 179, 181 (Iowa 1992)). Denial of First Amendment rights is required for the overbreadth doctrine to apply. *Russell,* 484 N.W.2d at 181. An individual who engages in unprotected speech may challenge a statute on overbreadth grounds "because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500, 507 (1987); *Russell,* 484 N.W.2d at 182; *State v. Todd,* 468 N.W.2d 462, 466 (Iowa 1991). If the overbreadth is substantial, it is declared facially invalid and may not be enforced against anyone until it is narrowed to reach only unprotected activity. *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394, 405 (1985).

██ A statute may be facially invalidated only if the overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 783

---

(1984) (citation omitted). The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. *Id.* at 800, 104 S.Ct. at 2126, 80 L.Ed.2d at 783; *Todd,* 468 N.W.2d at 466. There must be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. at 2126, 80 L.Ed.2d at 784.

Steven has not explained how prohibiting dentists from engaging in "dishonorable conduct" would infringe on others' exercise of free speech or chill free expression. He seems to suggest that dentists who criticize the Board will be subject to disciplinary proceedings for "dishonorable conduct." Dentists have First Amendment rights to criticize Board decisions in a professionally appropriate manner. *See Matter of Frerichs,* 238 N.W.2d 764, 767 (Iowa 1976) (attorney has free speech right to criticize the court in professionally appropriate manner, but not to accuse the court of illegal acts). There is not, however, a right to misrepresent the Board's disciplinary action in an effort to retain patients, especially when the misrepresentation may mislead patients as to the nature and severity of the disciplinary action taken. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 364 (1976) (regulating false, deceptive, or misleading commercial speech is permissible). We have no reason to believe the Board will discipline dentists who engage in professionally appropriate criticism of its decisions.

We are not convinced that the prohibition of "dishonorable conduct" presents a realistic danger that the protected free speech rights of third parties not before this court will be chilled. Also, the potential for chilling of protected speech is very small in relation to the statute's legitimate sweep in regulating professional conduct of licensed dentists. We do not find section 153.34(7) to be substantially overbroad and believe that whatever overbreadth might exist "should be cured

through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830, 842 (1973). We affirm the district court.

**AFFIRMED.**