693 P.2d 973

**STATE of Arizona, Appellee,**

v.

**James D. JOHNSON, Appellant.**

**No. CA–CR 7087.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 15, 1984.

Review Denied Nov. 15, 1984.

**320**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Linda A. Akers, Asst. Atty. Gen., Phoenix, for appellee.

George T. Anagnost, Phoenix, for appellant.

## OPINION

EUBANK, Presiding Judge.

Appellant filed this appeal from his conviction of one count of trafficking in stolen property, a Class 3 felony in violation of A.R.S. § 13–2307, and from his sentence of imprisonment for a term of ten years. He presents four issues for our consideration: (1) whether A.R.S. §§ 13–2301 and 13–2307 are unconstitutional on the grounds that they violate equal protection or are overbroad; (2) whether the trial court erred in denying appellant's motion for a directed verdict of acquittal on the ground of entrapment, or alternatively, whether the trial court erred in denying appellant's request for a jury instruction on entrapment; (3) whether appellant's ten-year sentence was excessive and disproportionate; and (4) whether credit cards are "property" under A.R.S. § 13–2307(A). We affirm.

The evidence presented at trial, taken in a light most favorable to sustaining the verdict, established that on April 28, 1982, Shirley Toth's wallet was stolen from her purse while she was parked at a gas station in Phoenix. The wallet contained cash, her driver's license, a Gemco identification card, a Sears credit card, a check guarantee card, a New England Mutual Life Insurance identification card, a Firestone credit card, a Southwest Savings 24-hour bank card, and a social security card. That afternoon, appellant sold Officer Leroy Trower, a Phoenix Police Department detective, all of the credit cards and identification belonging to Toth for $40.00. Trower was assigned to a storefront sting operation which had been set up to purchase stolen property. Detective Douglas Klein was also working in an undercover capacity at the storefront operation on April 28, 1982. He operated video cameras which recorded each transaction. He identified state's Exhibit 2 as a videotape of appellant and Trower that he made of the transaction.

Appellant's defense was entrapment. He testified that he did not steal the wallet from Shirley Toth, and that he received the credit cards from his friend Dee Dee. He testified that he sold the cards for Dee Dee because Dee Dee had told him that he (Dee Dee) owed the buyer some money, and if he (Dee Dee) went there, the buyer would take what he owed him out of the proceeds. Appellant testified that he knew that the credit cards and identification did not belong to Dee Dee, and he suspected that they were stolen. He testified that Dee Dee and the buyer had worked out a price for the cards, and he went to the address simply to deliver the cards and collect the money.

Dee Dee testified for the defense that he received the stolen credit cards and identification from a man named Larry from whom he had previously received stolen property on at least four occasions. Dee Dee would sell the property at the storefront sting operation and share the proceeds with Larry. Dee Dee then used the money to purchase heroin. With regard to the transaction in the instant case, Dee Dee testified that the undercover officers had told him to stay away because he was "hot", and therefore he enlisted appellant's assistance in selling the stolen cards and identification.

At both the close of the state's case, and after the presentation of all evidence, appellant moved for a judgment of acquittal. Following the presentation of the state's evidence, appellant moved for a judgment of acquittal on the ground that the state had not established that the stolen items were property owned by the victim at the

time of the sale, and on the ground that the state had not established the culpable mental state of recklessness required by A.R.S. § 13–2307(A). At the close of all evidence, appellant moved for a judgment of acquittal on the ground that the evidence established entrapment as a matter of law. Alternatively, he argued that if entrapment were not established as a matter of law, he was entitled to an instruction on entrapment. The trial court denied all motions for judgment of acquittal and refused to instruct the jury on entrapment.

The jury found appellant guilty of trafficking in stolen property as charged. Appellant then proceeded to trial on allegations of prior convictions. The jury found that appellant had been previously convicted of robbery with a deadly weapon and burglary in the second degree. On April 4, 1983, the trial court entered judgment finding appellant guilty of trafficking in stolen property, a Class 3 felony, with two prior felony convictions, and sentenced appellant to serve a term of imprisonment of ten years to date from sentencing with no credit for pretrial incarceration. The trial court found as a mitigating factor that the value of the items appellant sold was minimal. Appellant timely filed a notice of appeal.

## I. CONSTITUTIONALITY OF A.R.S. §§ 13–2301 and 13–2307

### A. *Equal Protection*

Appellant contends that A.R.S. §§ 13–2301 and 13–2307 violate equal protection by purporting to impose a higher punishment for conduct also prohibited by the theft statute, A.R.S. §§ 13–1801, *et seq.* A.R.S. § 13–2307(A) provides:

A person who recklessly traffics in the property of another that has been stolen is guilty of trafficking in stolen property in the second degree.

A.R.S. § 13–2307(C) makes trafficking of stolen property in the second degree a Class 3 felony. A.R.S. § 13–2301(B) defines stolen property as property which has been the subject of an unlawful taking, and defines "traffic" as:

[T]o sell, transfer, distribute, dispense or otherwise dispose of stolen property to another person, or to buy, receive, possess or obtain control of stolen property, with intent to sell, transfer, distribute, dispense or otherwise dispose of to another person.

A.R.S. § 13–1802(A)(1) provides that a person commits theft if he knowingly "[c]ontrols property of another with the intent to deprive him of such property." A.R.S. § 13–1802(A)(5) provides that a person commits theft if he knowingly, "[c]ontrols property of another knowing or having reason to know that the property was stolen." A.R.S. § 13–1802(C) provides for the classification of theft offenses from a Class 1 misdemeanor to a Class 3 felony, depending on the value of the property. Property is defined by A.R.S. § 13–105(27) to mean "anything of value, tangible or intangible."

For purposes of determining this issue, we will assume without deciding that the same conduct could constitute either theft or trafficking. Although appellant contends that it is axiomatic that a statute may not impose a higher punishment for the same conduct also proscribed under a different statute which imposes a lesser punishment, the issue has been decided adversely to appellant in Arizona. The Arizona Supreme Court has held that there is no constitutional infirmity in statutes which provide different penalties for the same conduct where the appellant has made no showing that he was the subject of prosecution based on an unjustifiable selection standard. *State v. Romero*, 130 Ariz. 142, 147, 634 P.2d 954 (1981). The United States Supreme Court recently reiterated its settled rule that when an act violates more than one criminal statute, a defendant may be prosecuted under either statute so long as the government does not discriminate against any class of defendants. *United States v. Batchelder*, 442 U.S. 114, 123–124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). In this case, appellant has made no showing that his prosecution was based upon an unjustifiable standard such

as race, religion or other arbitrary classification. We find no equal protection violation.

### B. *Overbroad*

Appellant also argues that the trafficking statute is overbroad because it fails to fix a value threshold or to otherwise grade the value of the property stolen. He contends that equal protection includes a requirement that classifications be rationally based, and that the statute in question fails to distinguish the criminality of an individual who sells a stolen credit card from the criminality of an individual who sells stolen firearms or expensive jewelry.

■ A statute is overbroad, "when its language, given its normal meaning, is so broad that the sanctions may apply to conduct which the state is not entitled to regulate." *State ex rel. Purcell v. Superior Court,* 111 Ariz. 582, 584, 535 P.2d 1299 (1975). The statute in this case is not overbroad. It does not criminalize an innocent transfer of property from one party to another. The state may properly prohibit dealing in stolen property regardless of the value of the property. The legislature promulgated the trafficking statute to focus not on the value of the property but rather on the trafficking process. A.R.S. § 13–2307 defines the crime of trafficking and does not include persons whose conduct does not fall within the purpose to be achieved by the statute. We find that A.R.S. § 13–2307 is not overbroad.

### II. ENTRAPMENT

Appellant argues that the trial court erred in failing to direct a verdict of acquittal at the close of the evidence on the ground that the evidence established entrapment as a matter of law. Alternatively, he contends that the trial court erred in refusing to instruct the jury on entrapment.

Appellant relies on *State v. Boccelli,* 105 Ariz. 495, 467 P.2d 740 (1970), in arguing that the evidence in this case established entrapment as a matter of law. In *State v. Boccelli,* the Arizona Supreme Court re-versed the conviction of a defendant under circumstances where the state's agents supplied all the ingredients of the offense: the plan, the marijuana, the buyer, the money for the purchase and where the intent to sell was implanted by the police officer's inquiry. Appellant contends that *Boccelli* is applicable to this case because the government supplied the plan, the property, the money, asked appellant how much he wanted for the stolen cards, while knowing that Dee Dee would receive the money from the sale to support his heroin habit. We disagree.

■ First, Dee Dee testified that he obtained the property in question from Larry, not from the police, and he alone enlisted appellant's participation in the offense. There is no evidence that police officers told Dee Dee to send another person to the storefront operation in his place. Dee Dee told appellant that he could not go to the storefront operation because he was "hot." Appellant agreed with Dee Dee to sell the property in order to obtain part of the proceeds, not because of what police officers said. Finally, there is no evidence that Dee Dee was acting as a paid informant or as an agent for the state. We find that the evidence did not establish a defense of entrapment as a matter of law, and that the trial court did not err in denying appellant's motion for a directed verdict of acquittal.

■ Alternatively, appellant contends he was entitled to a jury instruction on the issue of entrapment. To be entitled to an instruction on entrapment, a defendant must admit the elements of the crime. *State v. Mendoza,* 109 Ariz. 445, 511 P.2d 627 (1973). A.R.S. § 13–2307(A) provides that a person is guilty of the offense of trafficking in stolen property when he "recklessly traffics in the property of another that has been stolen." Stolen property is property which has been the subject of any unlawful taking. A.R.S. § 13–2301(B)(2). Appellant testified that he was not aware that the credit cards were stolen, although he suspected that they were sto-

len. He also testified that while he knew the credit cards did not belong to Dee Dee, he sold them as a favor to Dee Dee. Moreover, as previously discussed, there is no evidence that government officials or agents induced appellant to commit an offense that he would not otherwise have committed. Thus, the record shows that Dee Dee, in his individual capacity, solicited appellant's participation in the offense, and that appellant readily agreed to the scheme. We conclude that the trial court correctly refused appellant's instruction on entrapment. *State v. Crumley*, 128 Ariz. 302, 625 P.2d 891 (1981).

## III. EXCESSIVE OR DISPROPORTIONATE SENTENCE

Appellant also contends that his ten-year sentence was excessive and disproportionate under *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Solem v. Helm*, the Supreme Court determined that a sentence of life imprisonment without the possibility of parole imposed on a defendant who was convicted of a no-account check for $100.00 with six prior convictions was significantly disproportionate to his crime and constituted cruel and unusual punishment. The Arizona Supreme Court in *State v. Hankins*, 141 Ariz. 217, 686 P.2d 740 (consolidated) (1984), pointed out that *Solem v. Helm* does not require an extensive proportionality analysis with regard to every appeal raising the issue. In *State v. Flores*, 140 Ariz. 469, 682 P.2d 1136 (consolidated) (App.1984), Division Two of this court held that neither a presumptive term of five years for assault with a knife nor a presumptive term of seven years for restraining a person with the intent to commit a felony constituted cruel and unusual punishment without engaging in a proportionality review pursuant to *Solem v. Helm*. The court applied the standards set forth in *State v. Mulalley*, 127 Ariz. 92, 618 P.2d 586 (1980), i.e., whether the sentence offends the perceptions of contemporary society and whether it is proportionate to the type of crime.

■ We do not find that it is necessary in every case to undertake a detailed proportionality review. Such a review is not necessary in the instant case. In the instant case, appellant had been previously convicted of two felonies, robbery with a deadly weapon in 1972, and second degree burglary in 1962. The range of sentence was thus increased to a minimum term of ten years, a presumptive term of 11.25 years, and a maximum term of 20 years. The penalty imposed in this case therefore reflects not only punishment for a Class 3 felony, but also appellant's status as a recidivist. Moreover, police officers testified during trial that appellant had discussed with them future sales of guns, video recorders, and television sets. Specifically, appellant indicated to police that he had sold a television set earlier in the day. The trial court imposed a mitigated term of imprisonment in this case. In classifying trafficking in stolen property as a Class 3 felony, the legislature has recognized that trafficking is a serious threat to society, and that in many cases theft is committed for profit, rather than for personal use or consumption. *See* Blakey & Goldsmith, *Criminal Redistribution of Stolen Property: The Need for Law Reform*, 74 Mich. L.Rev. 1511 (1976). We conclude that appellant's mitigated sentence of ten years is neither disproportionate to the offense nor excessive.

## IV. CREDIT CARDS AS "PROPERTY"

Appellant argues that he was improperly charged under A.R.S. § 13–2307, because: (1) the unlawful sale of credit cards is governed by A.R.S. § 13–2102, or, alternatively, (2) that credit cards are not "property" within the meaning of A.R.S. §§ 13–2301 and 13–2307, the trafficking statutes.

■ We first consider appellant's contention that it was improper to charge him under A.R.S. § 13–2307 rather than A.R.S. § 13–2102. A.R.S. § 13–2102 prohibits the unlawful sale of credit cards. In an analogous case, *State v. Ulmer*, 21 Ariz.App. 378, 519 P.2d 867 (1974), we held that a defendant could be properly charged under

**324**

either the general forgery statute or statutes prohibiting the fraudulent use of a credit card, where the defendant had used the credit card of another, forging the name of the other person to the credit card slip, in an attempt to obtain merchandise. We held that a difference in penalties between the statutes did not create an inconsistency between the statutes so as to preclude the prosecution of the defendant under the general forgery statute. We pointed out that where the facts of the case fall within the prohibition of two statutes, the state is not prohibited from prosecuting under either of the two statutes where the enactment of one statute does not affect an implied repeal of the other statute. We also pointed out that in order to create an implied repeal, there must be a "positive repugnancy" between the two statutes. Although appellant does not argue that A.R.S. § 13–2102 created an implicit repeal of A.R.S. § 13–2307 with regard to trafficking involving the use of credit cards, we do find that there is no positive repugnancy between the statutes, and that the trafficking statute is not inconsistent with the credit card statute. We have already noted that the state has the authority to prosecute a criminal offense under any of several applicable statutes. *State v. Romero, supra.* Accordingly, we find that A.R.S. § 13–2102 did not preclude the prosecution of appellant under A.R.S. § 13–2307.

Appellant also contends that credit cards are not "property" within the meaning of A.R.S. § 13–2301 and A.R.S. § 13–2307. A.R.S. § 13–2301 does not include a definition of property applicable to A.R.S. § 13–2307. A.R.S. § 13–105(27) provides that in Title 13, unless the context otherwise requires: " 'Property' means anything of value, tangible or intangible."

Clearly bank cards and credit cards are included in this definition of "property." The plastic cards themselves qualify as tangible personal property representing a right, privilege, interest or claim. While the credit cards and bank guarantee cards belong to the issuing bank or company,

they qualify as "property of another." Moreover, referring to A.R.S. § 13–105(27) for the definition of property, it is easy to conclude that the cards had value. Clearly, under the facts of this case, appellant was able to obtain $40.00 for their sale. We conclude, therefore, that credit cards constitute "property" within the meaning of A.R.S. §§ 13–2307 and 13–105(27), and that appellant was properly prosecuted under the statutes.

For the foregoing reasons, the judgment and sentence are affirmed.

JACOBSON, C.J., and OGG, J., concur.