887 P.2d 599

**In the Matter of The APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JT9065297.**

**No. 1 CA–JV 93–0053.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 17, 1994.

As Corrected Sept. 23, 1994.

Review Denied Jan. 24, 1995.

Gary Peter Klahr, Phoenix, for appellant.

Richard M. Romley, Maricopa County Atty. by Jeffrey W. Pitts, Marie A. Scott, Deputy County Attys., Phoenix, for appellee.

Roderick G. McDougall, City Prosecutor by Cynthia A. Certa, Asst. City Prosecutor, Phoenix, for amicus curiae.

## OPINION

GRANT, Presiding Judge.

This is an appeal from the juvenile court's adjudication that appellant ("the juvenile") violated Phoenix's curfew for juveniles under the age of 16[1] and that she is therefore an incorrigible child. We must decide whether the Phoenix curfew ordinance violates the federal or state constitutions. We must also decide whether sufficient evidence supports the juvenile court's decision. This court has jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 8–236 (1989).

### FACTUAL AND PROCEDURAL HISTORY

On Saturday evening, May 1, 1993, the juvenile, a 15–year–old high school junior, obtained her father's permission to go out with a group of friends and make a series of stops. At approximately 11:00 p.m., she went to a friend's house in Phoenix to watch television. According to the juvenile, the friend's parents were asleep, however, and in order not to wake them, she and her friends walked to a park which was 50 to 100 yards across the street from her friend's house.

At 11:22 p.m., Phoenix Police Officer Renee Paquin responded to an anonymous report of a juvenile disturbance in a Northeast Phoenix park. Upon arriving, Officer Paquin heard loud laughing and found the juvenile along with two males, ages 16 and 17, in the park. Officer Paquin asked her age. When she responded that she was 15 years old, the officer took her into custody. Officer Paquin did not attempt to contact the juvenile's par-

ents to determine whether she had their permission to be in the park. The officer transported her to a detention center where she was cited for violating Phoenix's 10:00 p.m. curfew for juveniles under the age of 16. She was fingerprinted, photographed, and eventually released to her mother.

On August 20, 1993, the juvenile court held a hearing on the alleged curfew violation. The juvenile's father testified on direct examination that he gave his daughter permission to go to her friend Richard's house and to be in the park across from that house. On cross-examination, however, the father admitted that he did not have specific knowledge that his daughter would be at the park. On re-direct examination, he stated that if he had known that she was going to the park he would not have forbidden her from doing so. The father also testified that he felt his daughter's activity in the park was reasonable and was done with his permission.

The juvenile court ruled that the state had proven beyond a reasonable doubt that the juvenile had violated the 10:00 p.m. curfew. The court adjudicated her an incorrigible child and imposed a $56.00 penalty. The juvenile filed a timely notice of appeal in which she presents the following issues:

1.  Is Phoenix's curfew ordinance unconstitutional because it unduly restricts the rights of juveniles and parents?

2.  In light of the testimony that the juvenile was out with her parents' permission, did the juvenile court abuse its discretion in finding beyond a reasonable doubt that she violated the curfew ordinance?

### DISCUSSION

I.  *Constitutional Issues*

A.  **Waiver**

■ The state and the amicus curiae, City of Phoenix, argue that the juvenile has

---

1.  Phoenix, Ariz., City Code section 22–1 (Supp. June 30, 1993) provides:

    It shall be unlawful for any juvenile under the age of sixteen years to be, remain or loiter in, about or upon any place in the City away from the dwelling house or usual place of abode of said juvenile, between the hours of 10:00 o'clock P.M. and 5 o'clock A.M. of the following day; *Provided however*, that the provisions of this Section do not apply to said

juvenile when accompanied by his parent, guardian or other adult person having the care, custody or supervision of said juvenile; or where said juvenile is on an emergency errand; or where said juvenile is on reasonable, legitimate and specific business or activity directed or permitted by his parent, guardian or other adult person having the care, custody or supervision of said juvenile.

waived her constitutional objection to the curfew ordinance because, although her trial counsel[2] raised the issue, he declined to recess the hearing for three weeks in order to brief his client's constitutional arguments.

A defendant may assert a constitutional right and then subsequently waive it, but "the state has a heavy burden to show such waiver once the right has been asserted." *State v. Greenawalt*, 128 Ariz. 150, 158, 624 P.2d 828, 836, *cert. denied*, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). Arizona courts indulge every reasonable presumption against a waiver of fundamental constitutional rights. *Quinton v. Superior Court*, 168 Ariz. 545, 549, 815 P.2d 914, 918 (App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992). A criminal defendant's waiver of constitutional rights must be express rather than implied, and the waiver must be voluntarily, knowingly and intelligently made. *Id.*

The juvenile did not waive her constitutional challenges to the curfew. The only suggestion of a waiver is trial counsel's decision not to accept a three-week continuance to brief the constitutional issues, and his request at the end of the hearing that the juvenile court enter its findings without receiving memoranda from the parties. These decisions do not meet the standards for an express, voluntary, knowing, and intelligent waiver.

### B.  Merits of the Constitutional Claims

The juvenile challenges the Phoenix curfew ordinance as violative of her fundamental rights under the United States and Arizona Constitutions. We first address her standing to bring these claims.

#### 1.  Standing

The juvenile clearly has standing to challenge the ordinance as an unconstitutional burden on her asserted right to freedom of movement. The juvenile court adjudicated her to be incorrigible for violating the ordinance's restrictions on her movement after 10:00 p.m.

The City of Phoenix contends that the juvenile has no standing to challenge the ordinance for overbreadth or vagueness because her conduct fell squarely within the ordinance's prohibitions against being out without her parents' specific permission. *See Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974) (holding that a person whose conduct is clearly prohibited by an ordinance may not challenge it for overbreadth or vagueness). We conclude that the juvenile can assert the ordinance's overbreadth and vagueness.

■  An exception to the traditional standing rule is recognized in First Amendment cases. *State v. Steiger*, 162 Ariz. 138, 144, 781 P.2d 616, 622 (App.1989). A litigant may assert the facial overbreadth or vagueness of an ordinance even though his or her conduct is not constitutionally protected and clearly falls within the scope of the ordinance. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976) (vagueness); *Franzi v. Superior Court*, 139 Ariz. 556, 563, 679 P.2d 1043, 1050 (1984) (overbreadth); *Steiger*, 162 Ariz. at 144, 781 P.2d at 622 (vagueness). This exception reflects the concern that "the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression. The exception is justified by the overriding importance of maintaining a free and open market for the interchange of ideas." *American Mini Theatres, Inc.*, 427 U.S. at 60, 96 S.Ct. at 2447 (citation omitted). For the exception to apply, the deterrent effect on First Amendment activities must be both real and substantial, and the statute must not be readily subject to a narrowing construction. *Id.* "There must be a realistic danger that the statute will significantly jeopardize recognized first amendment protections of individuals not before the court." *Steiger*, 162 Ariz. at 144, 781 P.2d at 622 (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984)).

■  Walks in a park have been characterized as among historical "amenities of life"

---

**2.**  Different counsel represented the juvenile in   the juvenile court.

which, though not mentioned in the Constitution or Bill of Rights, give us our feeling of dignity, independence, and enjoyment of life. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). However, we do not believe that the juvenile's walk in the park was protected First Amendment activity. *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."). Nevertheless, we analyze the juvenile's overbreadth and vagueness challenges because of the curfew ordinance's potential to restrict activities that are protected under the First Amendment. We next discuss minors' fundamental rights and First Amendment freedoms.

### 2. Applicability of the Bill of Rights to minors

Until recently in this century, a minor was neither recognized

> philosophically nor legally ... as having a right to *do* anything about the vicissitudes of his life, but only to await the action of others on his behalf or in his best interests.... The child's subjugated status was rooted in the same benevolent despotism that kings, husbands, and slave masters claimed as their moral right.

Patricia M. Wald, *Making Sense Out Of The Rights Of Youth*, 4 Human Rights 13, 15 (1974). The belief that minors possessed no rights was rooted in the legal fiction that childhood was a homogenous condition "continuing from the age of birth to the age of majority, at which time the young person is presumed to be capable of responsible adult decision making." *Legal Rights of Children* 116 (Robert M. Horowitz & Howard A. Davidson eds., 1984). This legal fiction failed to recognize that adolescents gradually become able to make intelligent and mature decisions for themselves and that they do so at varying ages.

The Supreme Court has flatly rejected this antiquated view of minors' rights: "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). Although the Court has been reluctant to attempt to define "the totality of the relationship of the juvenile and the state," it is clear that "whatever may be their precise import, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). Thus, minors enjoy many of the same constitutional guarantees as adults. *Brown v. Board of Educ.*, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873 (1954) (equal protection with respect to race); *In re Gault*, 387 U.S. at 30–57, 87 S.Ct. at 1445–59 (right to due process in juvenile court proceedings, including rights to counsel, notice, confrontation, cross-examination, and privilege against self-incrimination); *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (requiring proof beyond a reasonable doubt if act charged would be a criminal offense if committed by an adult); *Breed v. Jones*, 421 U.S. 519, 541, 95 S.Ct. 1779, 1791, 44 L.Ed.2d 346 (1975) (requiring protection against double jeopardy); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (due process in civil proceedings); *Planned Parenthood v. Danforth*, 428 U.S. at 75, 96 S.Ct. at 2844 (right to privacy); *Bellotti v. Baird*, 443 U.S. 622, 643–44, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797 (1979) (right to terminate pregnancy without parental consent via judicial proceeding where minor can demonstrate her ability to make such a decision or that abortion would be in her best interests).

Minors "are entitled to a significant measure of First Amendment protection...." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212–13, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975) (holding that First Amendment guarantees minors' access to nonobscene information). The Supreme Court has recognized that the First Amendment rights of minors include the freedoms

of speech, expression, and religion. *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 514, 89 S.Ct. 733, 740–41, 21 L.Ed.2d 731 (1969); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943). We see no reason why juveniles should not also enjoy the rights to assemble, to petition the government for the redress of grievances, and to associate. Wald, *supra*, at 20 ("[T]here is a whole range of civil rights that youths—at least from 12 up—ought presumably to enjoy. These include, obviously, free speech, and more troublesomely, freedom of association.").

■ Whenever the exercise of a minor's rights to freedom of speech, religion, assembly and association require the minor to move about, freedom of movement must also be protected under the First Amendment. Restricting movement so that an individual cannot exercise First Amendment rights without violating the law is equivalent to a denial of those rights. *City of Maquoketa v. Russell*, 484 N.W.2d 179, 183 (Iowa 1992); *accord Aptheker v. Secretary of State*, 378 U.S. 500, 520, 84 S.Ct. 1659, 1671, 12 L.Ed.2d 992 (1964) (Douglas, J. concurring) ("Freedom of movement is kin to the right of assembly and to the right of association."); *Ervin v. State*, 41 Wis.2d 194, 163 N.W.2d 207, 210 (1968) ("We would not deny the relatedness of the rights guaranteed by the First Amendment to freedom of travel and movement.... Freedom of movement is inextricably involved with the freedoms set forth in the First Amendment.").

■ Even apart from the First Amendment, citizens enjoy a fundamental right to freedom of movement. "The right to walk the streets, or to meet publicly with one's friends for a noble purpose or for no purpose at all—and to do so whenever one pleases—is an integral component of life in a free and ordered society." *Waters v. Barry*, 711 F.Supp. 1125, 1134 (D.D.C.1989); *Papachristou v. City of Jacksonville*, 405 U.S. at 164, 92 S.Ct. at 844; *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242, 1254 (M.D.Pa.1975), *aff'd*, 535 F.2d 1245 (3d Cir.), *cert. denied*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976). This right is rooted in our federal and state constitutional protections of fundamental liberty interests under the doctrine of substantive due process. U.S. Const. amend. XIV; Ariz. Const. art. 2, § 4; *Waters v. Barry*, 711 F.Supp. at 1134; *accord People in the Interest of J.M.*, 768 P.2d 219, 221 (Colo.1989). "That citizens can walk the streets, without explanations or formal papers, is surely among the cherished liberties that distinguish this nation from so many others." *Gomez v. Turner*, 672 F.2d 134, 143–44 n. 18 (D.C.Cir.1982). The right to freedom of movement extends to minors as well as adults. *Johnson v. City of Opelousas*, 658 F.2d 1065, 1072 (5th Cir.1981).

*3. Restrictions on minors' fundamental rights and the appropriate level of constitutional scrutiny*

While it is undeniable that minors enjoy fundamental rights, including First Amendment freedoms and the right to move about freely, those rights are not "automatically coextensive with the rights of adults." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986) (holding that student's First Amendment rights were not violated when officials suspended him for making a sexually suggestive speech at a high school assembly). In a variety of contexts, "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." *Prince v. Massachusetts*, 321 U.S. 158, 170, 64 S.Ct. 438, 444, 88 L.Ed. 645 (1944); *see also McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971) (holding that juvenile delinquency proceedings do not require a jury trial because juries are not "a necessary component of accurate fact-finding"); *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (upholding statute banning sale of sexually oriented material to minors). The state may properly adjust its legal system to account for the unique characteristics and needs of minors. *Bellotti*, 443 U.S. at 635, 99 S.Ct. at 3044.

■ How does a court balance the state's unique and compelling interest in minors' welfare against minors' fundamental rights? The Supreme Court has articulated the ap-

propriate standard: Government restrictions that inhibit the fundamental rights of minors are valid only if the restrictions serve a "significant state interest ... that is not present in the case of an adult." *Planned Parenthood v. Danforth,* 428 U.S. at 75, 96 S.Ct. at 2844; *see also City of Opelousas,* 658 F.2d at 1073.[3] This test is less rigorous than the "compelling state interest" test applied to restrictions on the fundamental rights of adults. *Carey v. Population Serv. Int'l,* 431 U.S. 678, 693 n. 15, 97 S.Ct. 2010, 2020 n. 15, 52 L.Ed.2d 675 (1977).

■ In determining whether a significant state interest not present in the case of an adult justifies infringing upon minors' fundamental rights, we examine three factors: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." *Bellotti,* 443 U.S. at 634, 99 S.Ct. at 3043.[4] If the state does not have a significant interest that is unique to children in terms of one of these factors, then the state must treat adults and children the same. *See City of Opelousas,* 658 F.2d at 1073–74; Note, *Assessing The Scope Of Minors' Fundamental Rights: Juvenile Curfews And The Constitution,* 97 Harv.L.Rev. 1163, 1166 (1984) ("[T]he state should not be permitted to dilute the rights of a citizen simply because she is below the age of majority.").

### 4. Bellotti analysis

The state argues that all three *Bellotti* factors support the constitutionality of the Phoenix curfew ordinance. It asserts that youths at night are more vulnerable to crime and peer pressure than adults; that minors lack experience, perspective and judgment to recognize and avoid detrimental choices such as drugs, alcohol and crime; and that the city's restriction on minors' movement after 10:00 p.m. reinforces parental authority and home life, and encourages parents to actively supervise their children.

■ We recognize that the majority of state and federal courts that have analyzed juvenile curfew laws using *Bellotti*'s criteria[5] have concluded that such ordinances do not serve a significant state interest that is unique to minors. We, however, do not agree with those courts. First, we note that the plague of crime and drugs at which the curfew is directed, while not *peculiar* to minors, is *more damaging* to them because they are more vulnerable.

■ The second *Bellotti* factor—minors' inability to make critical decisions—also supports the curfew's restriction of minors' rights of freedom of movement. The Supreme Court has recognized that "[t]he state has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely." *Hodgson v. Minnesota,* 497 U.S. 417, 444, 110 S.Ct. 2926, 2942, 111 L.Ed.2d 344 (1990).

We recognize that certain temptations may arise during curfew hours which could end in serious consequences for a juvenile. Other statutes also offer specific protection against

---

3. *Cf.* Wald, *supra,* at 25 ("[C]ontemporary concepts of fairness strongly support adoption of a general presumption that children should be allowed the same rights and freedoms as adults unless there is a significant risk of irreversible damage to them—physical, psychological, emotional—from exercising such rights or a general consensus backed by empirical data that at particular ages children do not have sufficiently developed skills to exercise those rights.").

4. "These three factors, notwithstanding their expression in a plurality opinion, represent the Court's only reasoned discussion to date of the possible bases for distinguishing minors' constitutional rights from adults'. As such, *Bellotti* is generally cited in cases that require such a distinction, including cases addressing the constitutionality of juvenile curfew statutes." *Waters v. Barry,* 711 F.Supp. at 1136–37 n. 25.

5. *City of Opelousas,* 658 F.2d at 1073–74; *Waters v. Barry,* 711 F.Supp. at 1136–37; *McCollester v. City of Keene,* 586 F.Supp. 1381, 1386 (D.N.H. 1984); *City of Maquoketa,* 484 N.W.2d at 186; *Brown v. Ashton,* 93 Md.App. 25, 611 A.2d 599, 608–09 (1992), *cert. granted,* 328 Md. 462, 615 A.2d 262 (1992); *Allen v. City of Bordentown,* 216 N.J.Super. 557, 524 A.2d 478, 486–87 (Ct.Law Div.1987). *But see Interest of J.M.,* 768 P.2d 219 at 223; *City of Panora v. Simmons,* 445 N.W.2d 363, 369 (Iowa 1989) (5–4 decision); *City of Milwaukee v. K.F.,* 145 Wis.2d 24, 426 N.W.2d 329, 338–39 (1988) (4–3 decision).

the consequences of such choices—statutes, for example, that prohibit the sale of liquor or pornography to minors and prohibit the admission of minors to adult entertainment establishments or statutes that prohibit juveniles from purchasing and consuming liquor (A.R.S. section 4–244(9)) and requiring minors to have permission to marry (A.R.S. section 25–102). The people of this state, through legislative action, have deemed it necessary and proper to protect children in these specific ways.

*Bellotti*'s third concern—the importance of the parental role in child-rearing—also supports the Phoenix curfew ordinance.

■ We agree that child-rearing is the role of parents, not of impersonal political institutions. *Bellotti*, 443 U.S. at 638, 99 S.Ct. at 3045–46. Absent signs of abuse or neglect, the state generally permits parents to raise their children as the parents see fit. *See, e.g., Parham v. J.R.*, 442 U.S. 584, 604, 99 S.Ct. 2493, 2505, 61 L.Ed.2d 101 (1979) (holding that parents may be presumed to act in child's best interest even when they commit the child to an institution against child's wishes); A.R.S. § 8–533 (1989).

■ The curfew ordinance, however, rests on the implicit assumption that in many cases the traditional family unit, in which two parents exercise control over their children's activities, has dissolved. Courts like this one, given the overview of life seen in their caseloads, know that this is undeniably true for overwhelming numbers of children in this country including Arizona as state court statistics demonstrate. *See* Arizona Sup.Ct., *Report of the Arizona Judicial Department* (1993); Arizona Sup.Ct., *Report of the Commission on Juvenile Justice*, (Grant Woods, Attorney General, chair, December 9, 1993); Arizona Town Hall, *Confronting Violent Crime in Arizona: Report of the 63rd Arizona Town Hall* (1993).

Therefore we follow those courts that have upheld curfew ordinances under a *Bellotti* analysis. *See Interest of J.M.*, 768 P.2d at

223; *City of Panora*, 445 N.W.2d at 369; *City of Milwaukee*, 426 N.W.2d at 338–39.[6] We also find persuasive the reasoning of the court in *Qutb v. Strauss*, 11 F.3d 488 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994); and *People v. Chambers*, 66 Ill.2d 36, 4 Ill.Dec. 308, 360 N.E.2d 55 (1976).

### 5. Substantial implication of the fundamental rights of parents and children

■ Phoenix's curfew clearly burdens a minor's liberty interest in freedom of movement. The juvenile was adjudicated an incorrigible child for meeting with her friends in a public park.

The ordinance could conceivably restrict minors' exercise of their First Amendment rights after curfew hours. For instance, a 17–year–old who attends midnight religious services without specific permission would be subject to arrest. *See* Phoenix, Ariz. City Code § 22–2 (imposing 12:00 o'clock midnight curfew for 16– and 17–year–olds). Similarly, a 15–year–old who appeared at a city council meeting to advocate for repeal of this ordinance would be subject to arrest if the meeting went past 10:00 p.m. and he or she did not have specific parental permission. The ordinance could prohibit minors from attending a host of activities such as school meetings, organized dances, theater and sporting events unless they are accompanied by a parent or guardian or have specific parental permission.

Finally, the ordinance could conceivably intrude into the constitutionally-protected zone of privacy surrounding family relationships and child-rearing. *See* Ariz. Const. art. 2, § 8; *Carey v. Population Serv. Int'l*, 431 U.S. at 684–85, 97 S.Ct. at 2015–16. For example, even if parents give their child permission to be in a specific location after 10:00 p.m., the parents and child may still be arrested and prosecuted for violating the ordinance if the city authorities deem the minors' otherwise lawful presence in the location to be unreasonable. Thus a drunken parent

---

**6.** We recognize that *City of Panora* and *City of Milwaukee* were each decided by one vote on sharply divided courts. We recognize also that the Iowa Supreme Court has since retreated

from *City of Panora* in a unanimous decision and criticized *City of Milwaukee*. *See City of Maquoketa*, 484 N.W.2d at 182–86.

who directs his or her 10–year–old child to go to a convenience market at 3 a.m. to buy food may subject both himself or herself and the child to arrest since this permission, although specific, is not reasonable. However, this requirement of reasonableness of parental permission protects unfortunate children from unreasonable, abusive or negligent parents who would subject their own child to a dangerous situation. *See* Phoenix, Ariz., City Code §§ 22–1, 22–2. An arrest of a minor under these circumstances would alert the state to the possible need for investigation by Child Protective Services to determine whether the minor needs protection. A.R.S. §§ 8–223(B)(3), 8–223(C)(2)(a), (b) (Supp. 1993).

### 6. Phoenix's curfew ordinance is not unconstitutionally overbroad

■ The state's asserted interests in preventing crime and victimization are compelling. But because the curfew ordinance burdens fundamental rights, it must be narrowly tailored to serve those compelling interests. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* — U.S. —, —, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (U.S.1993); *New Times, Inc. v. Arizona Bd. of Regents,* 110 Ariz. 367, 371, 519 P.2d 169, 173 (1974). Under this strict scrutiny analysis, there is no presumption of the ordinance's validity. *Qutb,* 11 F.3d at 492.

Like the strict scrutiny test, the overbreadth doctrine also requires that the ordinance be narrowly tailored. *State v. Johnson,* 112 Ariz. 383, 542 P.2d 808 (1975). If it "does not aim specifically at evils within the allowable area of [government] control, but ... sweeps within its ambit other activities that constitute an exercise" of First Amendment rights, the ordinance is void on its face. *City of Houston v. Hill,* 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987); *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940);

*State v. Johnson,* 143 Ariz. 318, 322, 693 P.2d 973, 977 (App.1984). "Even though the government has a legitimate and substantial purpose behind the legislation, that purpose cannot be sought by means that 'broadly stifle fundamental personal liberties' when 'less drastic means for achieving the same basic purpose' are available." *City of Opelousas,* 658 F.2d at 1071 (quoting *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960)); *see also United States v. Robel,* 389 U.S. 258, 268 n. 20, 88 S.Ct. 419, 425–26 n. 20, 19 L.Ed.2d 508 (1967).

The state and city cite six cases in which courts upheld other cities' juvenile curfew laws in urging that Phoenix's ordinance is not overbroad or unconstitutional. *See Qutb,* 11 F.3d at 488; *Bykofsky,* 401 F.Supp. 1242; *Interest of J.M.,* 768 P.2d 219; *Chambers,* 4 Ill.Dec. 308, 360 N.E.2d 55; *City of Panora*[7], 445 N.W.2d 363; *City of Milwaukee,* 426 N.W.2d 329.

The *Chambers* court focused on "the traditional right of the State" to impose time, place and manner restrictions on minors' rights, and cited juvenile crime statistics in support of the curfew. *Chambers,* 4 Ill.Dec. at 310–12, 360 N.E.2d at 57–59.

The most recent case, *Qutb,* upheld a Dallas ordinance that is similar but perhaps less restrictive than Phoenix's curfew. The numerous and broad exceptions to the curfew were central to the Fifth Circuit's conclusion that the Dallas ordinance was narrowly tailored. *Qutb,* 11 F.3d at 493–94. The Dallas ordinance specifically exempts minors who are "exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech, and the right of assembly." *Id.* at 498. The Dallas ordinance also does not apply to minors going to or from their employment, or certain school, religious, or recreational activities. *Id.* Nor does Dallas' curfew restrict a minor from being in front of his or her house or a neighbor's house. *Id.*

---

7. In *City of Panora* the court was very careful to point out that it was not deciding whether the First Amendment protected freedom of movement, and if so, whether the ordinance infringed on that right. 445 N.W.2d at 365. The ordinance there exempted minors traveling between home and their employment, religious, or munic-

ipal or school functions. The Iowa Supreme Court has since unanimously held that another ordinance which, like Phoenix's curfew, did not provide exceptions for minors' exercise of their First Amendment freedoms, was unconstitutionally overbroad. *City of Maquoketa,* 484 N.W.2d at 186.

The Phoenix ordinance does not contain any of these exceptions.

We would not expect that two major cities would draft ordinances with identical language. The fact that the Phoenix language is not identical to the Dallas ordinance does not mean that the reasoning in *Qutb* cannot be applied to analyze the Phoenix ordinance. We have noted the exemptions contained in the Dallas ordinance. The exemptions in the Phoenix ordinance are:

1. Accompanied by parent, guardian or other adult person having care, custody or supervision of the juvenile.

2. Emergency errand.

3. On reasonable, legitimate and specific business or activity directed or permitted by a parent, guardian, or other adult person having the care, custody or supervision of said juvenile.

In many ways we believe the exemptions in the Phoenix ordinance to be more liberal or generous than the exemptions in the Dallas ordinance. Certainly, these liberal exemptions leave a narrowly-tailored ordinance. Therefore we hold that the Phoenix juvenile curfew ordinance does not unduly burden fundamental rights of parents and children, and that the ordinance is not uncon-stitutionally overbroad. We must indicate that by so ruling we are implicitly ruling that the exemptions contained in the ordinance must be liberally construed to permit minors' exercise of First Amendment freedoms. Many other ordinances that have been held unconstitutionally overbroad failed to provide exceptions for minors exercising their First Amendment freedoms.[8] As the court in *Qutb* stated: "[N]either the restrictions of the curfew ordinance nor its defenses can be viewed in isolation from each other; the ordinance can be examined fairly only when the defenses are considered as part of the whole." 11 F.3d at 493.

Common sense and experience lead us to believe that juveniles who currently leave their homes to engage in violence, drug trafficking and other illegal behavior will probably not be deterred from doing so by the existence of the curfew. "[T]he decisions of these juveniles ... [are] utterly different than, and made long prior to and for reasons wholly separate from, their decisions to leave their homes either before or after [curfew]." *Waters v. Barry*, 711 F.Supp. at 1137. Virtually every activity the curfew seeks to thwart is already illegal and carries sanctions far more painful than the curfew's penalties.[9] "Logic thus suggests that the only juveniles

**8.** *City of Opelousas*, 658 F.2d at 1074 (invalidating juvenile curfew ordinance as overbroad); *In re Doe*, 54 Haw. 647, 513 P.2d 1385, 1389 (1973) (holding that juvenile curfew ordinance was unconstitutionally vague and overbroad); *S.W. v. State*, 431 So.2d 339–41 (Fla.Dist.Ct.App.1983) (invalidating ordinance that would have prohibited children from participating in school, recreational and religious activities during curfew hours); *W.J.W. v. State*, 356 So.2d 48, 50 (Fla. Dist.Ct.App.1978) (holding juvenile curfew ordinance unconstitutional); *City of Maquoketa*, 484 N.W.2d at 186 (invalidating juvenile curfew ordinance as overbroad); *City of Bordentown*, 524 A.2d at 481–87 (holding juvenile curfew ordinance was unconstitutionally vague, overbroad, and violative of minors' and parents' fundamental rights); *City of Wadsworth v. Owens*, 42 Ohio Misc.2d 1, 536 N.E.2d 67 (Mun.Ct.1987) (holding that curfew ordinance violated minors' right to attend religious services and right to move freely); *In re Mosier*, 59 Ohio Misc. 83, 394 N.E.2d 368, 372–77 (C.P.1978) (invalidating juvenile curfew ordinance as overbroad, vague, and violative of minors' First Amendment, Due Process, and Equal Protection rights); *see also Alves v. Justice Court of Chico Judicial Dist.*, 148 Cal. App.2d 419, 306 P.2d 601 (1957) (invalidating juvenile curfew ordinance as an "unlawful invasion of personal rights and liberties"); *City of Seattle v. Pullman*, 514 P.2d 1059, 1063 (1973) (invalidating juvenile curfew ordinance as vague and "bear[ing] no real or substantial relationship to the proclaimed governmental interest—the protection of minors."); *cf. Qutb*, 11 F.3d at 494 (upholding curfew with exception permitting exercise of First Amendment freedoms); *Bykofsky*, 401 F.Supp. at 1269 (upholding ordinance containing eleven exceptions including exemption for minors who were exercising First Amendment rights); *City of Panora*, 445 N.W.2d at 364 (upholding ordinance with exception for minors traveling between employment, religious, or municipal or school functions and home).

**9.** "It is difficult to go through a day without hearing of another crime committed by a juvenile, another violent act making the local news, another victim at the hands of a teenager. Often, these juvenile offenders have been in trouble before, but *very little has been done to prevent them from repeating their crimes.*" Letter from Grant Woods, Arizona Attorney General, to the Arizona Judicial Council (Dec. 3, 1993) in *Report of The Commission On Juvenile Justice* (emphasis added.)

for whom the [curfew] will likely have meaning will be those already inclined to obey the law." *Id.* at 1139. But this logical conclusion does not vitiate the ordinance's role of protecting those law-abiding juveniles. Indeed the ordinance removes them from the physical proximity and spheres of influence of those juveniles who have already chosen a life of crime and will ignore any curfew.

### 7. Vagueness

■ An ordinance is unconstitutionally vague if it contains language so imprecise that it fails to give persons of ordinary intelligence fair notice of what it forbids, and fails to provide explicit standards for those who enforce the ordinance. *State v. Tocco,* 156 Ariz. 116, 118, 750 P.2d 874, 876 (1988); *State v. Cook,* 139 Ariz. 406, 678 P.2d 987 (1984). An ordinance must convey "a definite warning of the proscribed conduct." *Fuenning v. Superior Court,* 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983).

■ The juvenile argues that Phoenix's ordinance is vague because the terms "reasonable, legitimate, and specific" do not give adequate notice of what business or activities a minor may engage in during curfew hours, and conversely, what activities are prohibited during curfew hours. In construing an ordinance, we give its words their usual and commonly understood meaning unless the legislative body intended otherwise. *Carrow Co. v. Lusby,* 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990). When an ordinance's language is unclear, we strive to give it a sensible construction and, if possible, uphold the ordinance. *State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990).

■ We are satisfied that the terms "legitimate" and "specific" do not render the ordinance unconstitutionally vague. An activity is "legitimate" if it is lawful. *Webster's Ninth Collegiate Dictionary* 683 (1984). The term "specific" describes activities that are "restricted to a particular individual [or] situ-

ation...." *Id.* at 1132. Excluding for the moment the term "reasonable," the ordinance allows a minor to engage in lawful activities which are restricted by parental permission. Conversely, the ordinance prohibits minors from engaging in unlawful conduct, or in unreasonable, illegitimate or general activities for which they lack their parents' express permission. These prohibitions are not vague.

The requirement that a minor's activities during curfew hours be "reasonable" similarly is not vague.[10] "Reasonable" is a test that the trier of fact must often apply. "Reasonable" in this context must mean something more than "legitimate" or "lawful." *See State v. Buhman,* 181 Ariz. 52, 887 P.2d 582 (App.1994); *Walker v. City of Scottsdale,* 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989) ("[E]ach word ... must be given meaning so that no part of the statute will be void, inert, redundant, or trivial."). The Arizona Supreme Court has twice decided that statutes requiring reasonable conduct in certain contexts were not unconstitutionally vague. *State v. Sanner Contracting Co.,* 109 Ariz. 522, 514 P.2d 443 (1973) (upholding antipollution statute requiring contractor to take "all reasonable precautions to prevent particulate matter from becoming windborne or airborne"); *State v. Milligan,* 87 Ariz. 165, 349 P.2d 180 (1960) (upholding hit-and-run statute requiring driver to "render to any person injured in the accident reasonable assistance"). Furthermore that court has held that criminal conduct can be evaluated by a "reasonable man" standard to determine whether a statute is unconstitutionally vague or overbroad. *State v. Johnson,* 112 Ariz. 383, 542 P.2d 808, 810 (1975).

The city contends that the word "reasonable" gives the ordinance flexibility so that parents can exercise discretion in deciding what activities are permissible for their children. The counter to the city's flexibility argument is that the word "reasonable"

---

**10.** Many legal responsibilities turn upon the "reasonableness" of a person's conduct as viewed by some trier of fact. "But it is in this realm, where the equilibrium between the individual's claims of freedom and society's demands upon him is left to be struck *ad hoc* on the basis of a subjective evaluation ... that there exists the risk of continuing irregularity with which the vagueness cases have been concerned." Note, *The Void–For–Vagueness Doctrine In The Supreme Court,* 109 U.Penn.L.Rev. 67, 93 (1960).

leaves the ordinance's prohibitions uncertain.[11]

■ We agree with the city that the term "reasonable" is not unconstitutionally vague. *See Bykofsky,* 401 F.Supp. at 1249. The "reasonable activity" exception provides flexibility as to what types of activities parents may or may not permit their children to do. In that way it preserves parental rights to raise children as the parent sees fit. *See Ginsberg,* 390 U.S. at 639, 88 S.Ct. at 1280.

### 8. State constitutional claims

The juvenile argues that in *Qutb* the district court pointed out that the Texas Constitution has been held to provide greater rights of free speech and press than the United State Constitution, as does the Texas Bill of Rights afford a greater right of privacy than the United States Bill of Rights. The Fifth Circuit found no reason for different treatment of the curfew issue under the Texas Constitution. The juvenile claims that the Arizona Constitution and Bill of Rights, likewise, provide greater rights than those of the United States. However the juvenile fails to follow through with this argument by pointing out to this court how the Arizona Constitution affords greater rights to juveniles in relation to the curfew ordinance than does the United States Constitution. We have nonetheless considered the juvenile's arguments in light of the Arizona Constitution and we find nothing that warrants a different treatment of the issue under the state constitution.

### CONCLUSION ON CONSTITUTIONALITY

We emphasize that the legislative response to Phoenix's problems of gangs, drugs, and crime is not for this court to second-guess or to undo, except insofar as it may detrimentally have an impact on the constitutional rights of citizens.

The Arizona Supreme Court has established the following rules to test the constitutionality of a statute:

> In testing the constitutionality of an ordinance we are bound to follow the following rules: (1) There is a presumption in favor of the constitutionality of a legislative enactment; (2) the person assailing the validity of a statute or ordinance has the burden of establishing that it infringes upon a constitutional guarantee or violates a constitutional principle; (3) the court must be satisfied beyond a reasonable doubt that the statute is unconstitutional; (4) every intendment must be indulged in favor of the validity of the statute; (5) constitutional provisions shall not be given a construction which will nullify legislation but must be liberally construed.

*New Times, Inc.,* 110 Ariz. at 370, 519 P.2d at 172 (citations omitted). However the foregoing is subject to the caveat that if fundamental rights are abridged by the ordinance, the ordinance can be upheld only upon a showing of a compelling state interest and restrictions on these rights must be drawn with narrow specificity. *Id.* at 371, 519 P.2d at 173. Under a strict scrutiny analysis the presumption of validity falls away. *See supra* p. 18; *Qutb,* 11 F.3d at 492. To overcome any presumption in favor of the constitutionality of a legislative enactment doubts must be resolved in favor of constitutionality. *McClead v. Pima County,* 174 Ariz. 348, 352, 849 P.2d 1378, 1382 (App.1992). We have analyzed the curfew ordinance pursuant these criteria and have determined that the ordinance is not unconstitutional.

---

11. One commentator explains that uncertain statutory terms like "reasonable"
> fail to give certain and equal operation, but on the other hand are more adaptable to varying circumstances than fixed terms. From the legislative point of view, facility of formulation counts in their favor. From the point of view of official administration and individual application, flexibility or indefiniteness has the double aspect of liberty and peril. Liberty means not only a desirable latitude of action, but also the temptation to take the benefit of the doubt;
the peril lies in the risk of error and misjudgment and its attendant consequences.
> It follows that in deciding upon the admissibility of flexible or indefinite terms, regard must be had to the circumstances under which, the persons by whom, and the sense of responsibility with which, the law will be applied, and to the consequences which an error will entail.

Ernst Freund, *The Use Of Indefinite Terms In Statutes,* 30 Yale L.J. 437, 438 (1921).

We hold that the Phoenix juvenile curfew ordinance does not violate state or federal constitutional guarantees.

Having determined that the ordinance is not unconstitutional we now consider whether in this case the evidence was sufficient to find a violation.

## II. *Sufficiency of the Evidence*

The standard of review for a claim that the evidence was not sufficient to support a finding of guilt is whether, reviewing the evidence in the light most favorable to the judgment, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992); *see also In re Maricopa County Juvenile Action No. JV–123196,* 172 Ariz. 74, 78, 834 P.2d 160, 164 (App.1992).

The Phoenix City Code imposes a nighttime curfew on its citizens under age 18. *See* Phoenix, Ariz., City Code §§ 22–1 to 22–7 (1993). Section 22–1 makes it unlawful for a juvenile under the age of 16 to be away from home between 10:00 p.m. and 5:00 a.m. the following day. The state met its burden of proving the prima facie elements of this offense. It was undisputed that appellant was under 16 years of age and that she was away from home after 10:00 p.m.

▉ The juvenile argues that the state had the additional burden to prove that she did not fall within the ordinance's parental permission exception, i.e., that she was not out on a "reasonable, legitimate and specific ... activity directed or permitted" by her parents. *See* Phoenix, Ariz., City Code § 22–1. We do not agree that this burden was on the state. A defendant who relies upon an exception to a criminal statute made by a proviso or distinct clause has the burden of establishing and showing that she comes within the exception. *United States v. Henry,* 615 F.2d 1223, 1235 (9th Cir.1980); *State v. Jung,* 19 Ariz.App. 257, 262, 506 P.2d 648, 653 (1973) ("[T]he state is not required to [prove] negative statutory exceptions—such exception is a matter of defense where it is not an ingredient of the offense.").

▉ There is sufficient evidence in the record to support a finding that the juvenile lacked her parents' specific permission to be in the park. Her father admitted that he did not know in advance that she was going to the park. Thus, it was impossible for him to have given his specific permission for her to go the park. Rather than being in the park *with her parents' permission,* the juvenile was in the park *without her parents' objection.* The juvenile did not meet her burden of proving that the parental permission exception exempted her from the curfew.

Having determined that the ordinance is constitutional and that the evidence supports the conviction for violation of the ordinance, we must affirm.

EHRLICH and VOSS, JJ., concur.